**UNITED STATES OF AMERICA, Appellee**

**v.**

**CHRIS HICKMAN, Appellant**

[991 F.2d 1110]

No. 92-7051

United States Court of Appeals
for the Third Circuit

April 16, 1993

Lolita d'Jones de Paiewonsky, Esq. (Argued), Christiansted, St. Croix, V.I., *for appellant*

Terry M. Halpern, Esq., United States Attorney, James R. Fitzner, Esq. (Argued), Office of United States Attorney, Christiansted, St. Croix, V.I., *for appellee*

BEFORE: BECKER, COWEN, and ROTH, *Circuit Judges*

## OPINION OF THE COURT

BECKER, *Circuit Judge*

Chris Hickman, a building contractor, was convicted by a jury on five counts of mail fraud and sentenced to forty-eight months in prison. In committing the fraud, Hickman mailed letters, progress reports, and supposed photographs of a house on St. Croix to Robert and Deborah MacEwan of New York, who had paid Hickman $163,000 for the construction of that house. However, contrary to Hickman's representations, the house was never built.[1] In his appeal, Hickman raises a number of challenges to the conviction it-

---

[1] The MacEwans contracted for the house in November of 1988. They did not return to St. Croix until September of 1989, at which time they discovered that almost nothing had been done, and that the work that had been completed was of such poor quality that it was collapsing.

self, none of which have merit or warrant discussion.[2] We must, however, address Hickman's contention that he was improperly sentenced.

First, Hickman alleges that the district court erred in adjusting his offense level upward by two levels for use of "a special skill[] in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. In Hickman's submission, § 3B1.3's adjustment for use of a special skill does not apply to the facts of this case. We agree.

Second, Hickman contends that the court erred when, based on its conclusion that Hickman's criminal history category under-represented the seriousness of his past criminal conduct, it made an upward departure from his Guidelines sentencing range without engaging in the "ratcheting" methodology required by U.S.S.G. § 4A1.3. Under § 4A1.3, the court must look to each succeeding level of criminal history for an appropriate "fit," and then look to the guideline range specified for that criminal history category. We agree that the district court failed to follow the procedure required by § 4A1.3. Accordingly, while we affirm the conviction, we will, for both reasons mentioned above, vacate the sentence and remand for resentencing.

I.

Section 3B1.3 of the Sentencing Guidelines provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role); if this adjust-

---

[2] Hickman alleges that the government engaged in prosecutorial misconduct in making improper and prejudicial summation arguments; that the district court erred in its final charge to the jury; that the court erred in refusing to modify the presentence investigation report upon consideration of Hickman's comments and objections thereto; and that the court failed to give him adequate notice of its intention to depart upward from the applicable Guidelines sentencing range. As stated in the text, we find no merit in these contentions. Moreover, the last named contention is mooted by our decision herein.

ment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3. The relevant Application Note provides:

"Special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.

U.S.S.G. § 3B1.3, Application Note 2.

The district court concluded that Hickman should receive the two points for use of a special skill because:

based upon his license as a contractor, his special expertise, these persons trusted him. It was his training and that license, I'm persuaded, that enabled him to perpetrate this scheme. He just didn't go out and find somebody to perpetrate this scheme. [They] just didn't go out and find somebody to do a few things for them. They gave him the total responsibility for the construction of a home. And, he held out his special skill and his license, assuring them that he was qualified and responsible and would do so.

Without that, I don't think that any of this would have happened. And, he would, based on my research, be an individual that was explained within the guidelines. And, we must adjust upward for that position of special skill.

Sentencing Transcript at 18 (Jan. 27, 1992). Our review of the district court's legal analysis is plenary. United States v. Bierley, 922 F.2d 1061, 1064 (3d Cir. 1990).[3]

■ The rationale of the district court's decision is not entirely clear, but it appears to rest on the conclusion that, if Hickman had not been a licensed contractor, the victims, who lived over a thousand miles away, would not have trusted him and believed his sta-

_____

[3] As we stated in Bierly.

The proper standard of review for a district court's conclusion [as to] an adjustment under the Guidelines ... depends on the mixture of fact and law necessary to that court's determination. Where the decision is grounded on an essentially factual basis, we defer to the district court's findings and reverse only for clear error. However, if the alleged error is legal, the issue should be reviewed de novo.

Bierley, 922 F.2d at 1064 (citation omitted).

tus reports without independent confirmation. But if that is the basis of the decision, it cannot survive, for the analysis conflates abuse of trust and special skill. Yet these are two discrete concepts, and the text of § 3B1.3 cannot accommodate their admixture.[4]

■ To abuse a position of trust, a defendant must, by definition, have taken criminal advantage of a trust relationship between himself and his victim. See, e.g., United States v. Hill, 915 F.2d 502, 506 & n.3 (9th Cir. 1990). The additional wrong undergirding the upward adjustment is the corrupt abuse of that trust relationship. The use of a special skill, on the other hand, does not require the existence of a relationship between the defendant and his victim. See, e.g., United States v. Hummer, 916 F.2d 186, 191 (4th Cir. 1990) (defendant's use of his special skills in threatening to tamper with consumer products accomplished in the absence of any relationship between himself and his victims), cert. denied, 111 S. Ct. 1608 (1991).

Moreover, the two concepts, "special skill" and "abuse of trust," have different effects vis-a-vis adjustments under other sections of the Guidelines. If an adjustment is based on an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 for an aggravating role in the offense (as an organizer, leader, manager, or supervisor of a criminal activity), but if the adjustment is based on the use of a special skill, it may not be employed in addition to an adjustment for role in the offense under § 3B1.1. U.S.S.G. § 3B1.3.[5]

■■ We therefore reject the district court's legal analysis, and turn directly to the question of whether Hickman's status as a licensed contractor constituted a special skill used to facilitate the crime. This analysis involves two distinct questions: (1) whether being a general contractor is a special skill within the meaning of § 3B1.3; and (2) whether that skill was used to facilitate the crime.

---

[4] The government attempts to argue on appeal that the upward adjustment can be justified on the grounds that Hickman abused a position of trust. Inasmuch as that argument was never advanced in the district court, we decline to consider it here.

[5] We are unclear as to basis for this distinction, and find the particular connection between leading or supervising others and using a special skill to be elusive. Nevertheless, the Commission has made that distinction, and it cannot be ignored.

The examples of special skills given in Guidelines Application Note 2 ("pilots, lawyers, doctors, accountants, chemists, and demolition experts") seem to require more skilled education, training, and licensing than is usually associated with being a general contractor. We do not rule out the possibility that the skills of a general contractor may, in some cases, be sufficient for application of this section. The record in the instant case, however, does not justify its application here. Moreover, while Hickman was licensed as a contractor by the Virgin Islands, the government has offered no evidence as to what skill requirements, if any, must be met to obtain such a license. Indeed, the license to which the parties refer, as best we can tell, is merely the general business license required of a wide range of commercial enterprises in the Virgin Islands. See V.I. Code Ann. tit. 27, § 301 et seq. (1970 & 1990 Supp.).

■ At all events, to qualify under the guidelines, the special skill must, at a minimum, be used actually to commit or conceal the crime, rather than merely to establish trust in a victim upon whom the defendant then perpetrates a garden variety fraud. The case law has generally involved a *direct* use of the special skill. See, e.g., United States v. Aubin, 961 F.2d 980, 984 (1st Cir.) (defendant's special training in the repair of ATM machines gave him the knowledge to cause a malfunction that would require servicing so that he could enter the ATM, deactivate its alarms, and then locate and obtain the money), cert. denied, 113 S. Ct. 248 (1992); United States v. Fairchild, 940 F.2d 261, 266 (7th Cir. 1991) (defendant's background in science and knowledge of chemistry used to manufacture methamphetamine); United States v. Culver, 929 F.2d 389, 393 (8th Cir. 1991) (defendant's skills as a pilot used to facilitate conspiracy to transport a stolen plane). We agree that such a direct use is required, and it is not present here. Hickman simply took advantage of the trust engendered in a business-client relationship to misappropriate the MacEwans' money.

In view of the foregoing analysis, we conclude that the upward adjustment for use of a special skill constituted legal error. Accordingly, Hickman's sentence must be recalculated without it.

## II.

The probation officer's calculation of Hickman's criminal history score placed Hickman in criminal history category III. Coupled

with a final offense level (after adjustments) of 13, Hickman's Guidelines sentencing range was 18 to 24 months. The district court departed upward from that range under § 4A1.3 based on its conclusion that a criminal history category of III did not adequately represent Hickman's long history of similar conduct. The court arrived at a sentence of 48 months by "doubling the top of the guideline range."[6] Sentencing Transcript at 39. The court gave no further explanation for the specific sentence. The record, however, reflects that the court was motivated by the fact that Hickman was still engaged in criminal activity at age 65 even though his history of fraud type offenses went back almost 40 years (to 1953).

■ The district court was justifiably outraged that the defendant, despite a considerable number of previous convictions involving deceit, continued to defraud unsuspecting victims. Unfortunately, however, the court failed to follow the procedures set forth for departing in such cases under § 4A1.3.[7]

Section 4A1.3 provides in relevant part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

U.S.S.G. § 4A1.3, Policy Statement. Then, addressing the means of calculating the extent of the departure that is appropriate under § 4A1.3, the policy statement continues:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly

---

[6] The court also sentenced Hickman to three years supervised release and restitution in the amount of $99,863.33.

[7] While § 4A1.3 is a policy statement, in contrast to a guideline, it "is an authoritative guide" for the application of the Guidelines. See Williams v. United States, 112 S. Ct. 1112, 1119 (1992); see also United States v. Shoupe, No. 92-7204, slip op. at 2 n.1, 1993 U.S. App. LEXIS 4510, at *2 n.1 (3d Cir. Mar. 12, 1993); United States v. Lambert, 984 F.2d 658, 662 (5th Cir. 1993) (en banc); United States v. Beckham, 968 F.2d 47, 54 n.4 (D.C. Cir. 1992).

under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with Criminal History Category IV, the court should look to the guideline range specified for a defendant with Criminal History Category IV to guide its departure.

Id.

■ Under this regime, the court is obliged to determine which category (of those higher than the category originally calculated for the defendant) best represents the defendant's prior criminal history. The court then uses the corresponding sentencing range to "guide its departure." Moreover, the court is obliged to proceed sequentially through these categories. It may not move to the next higher category until it has found that a prior category still fails to adequately reflect the seriousness of the defendant's past criminal conduct. See, e.g., United States v. Lambert, 984 F.2d 658, 662-63 (5th Cir. 1993) (en banc); see also id. at 661 n.5 (collecting cases requiring district courts to move sequentially through the criminal history categories when departing under § 4A1.3). As Judge Newman has explained:

The reason for obliging a judge to examine the next higher categories in sequence is that these categories reflect the Commission's careful assessment of how much incremental punishment a defendant should receive in light of the various degrees of a prior record. In formulating the Guidelines in general and the criminal history categories in particular, the Commission sought to implement a congressional policy of lessening disparity by narrowing, though not eliminating, the discretion of sentencing judges. At the same time, the Commission specified for each criminal history category a range of available sentences, in this case, seventeen months, so that a sentencing judge could somewhat adjust the sentence to reflect the unique characteristics of each case. In light of the Commission's careful construction of the criminal history categories, when a judge concludes that a defendant's category is inadequate, a sentence in the range of the next higher category will usually be sufficient. At least that next higher category must be considered and found inadequate before considering an even higher category.

United States v. Coe, 891 F.2d 405, 413 (2d Cir. 1989).

In this case, the district court in effect jumped more than three criminal history categories without explanation, and, a fortiori, without going through the ratcheting procedure prescribed by the Guidelines. At offense level 13, criminal history category III yields a sentence range of 18 to 24 months. That same offense level combined with criminal history category VI yields a guideline range of 33 to 41 months. In sentencing the defendant to 48 months in prison, the court not only violated the required ratcheting procedure, but failed to observe § 4A1.3's admonition that for departures above criminal history category VI, the court should also analyze the nature of the prior offenses, not simply their number.[8] Indeed, the Second Circuit has held that departing above category VI would be justified only in extraordinary circumstances: "'[O]nly the most compelling circumstances — for example, prior misconduct accompanied by wanton cruelty' would justify a 4A departure above Category VI." Id. (quoting United States v. Cervantes, 878 F.2d 50, 55 (2d Cir. 1989)).

We intimate no view as to the appropriateness of an upward departure under § 4A1.3 in this case. However, inasmuch as the district court failed to comply with the requirements of the Guidelines, we must remand for resentencing.

### III.

We will affirm the conviction on its merits. However, the judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.

ROTH, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the majority that Hickman's conviction should be affirmed and that the sentence should be vacated for the reasons set forth in Part II of the opinion. However, I cannot join in the majority's decision in Part I to vacate the sentence because of the two level upward adjustment under § 3B1.3 of the Sentencing Guidelines. I find that the district court judge adequately considered the issue of a two level increase for an abuse of a position of

---

[8] "In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." U.S.S.G. § 4A1.3, Policy Statement.

306

trust, that the judge expressed the reason and the grounds for the upward adjustment, and that for us now to vacate the sentence she imposed would transform the application of the Guidelines into a process requiring the incantation of a necromancer's spell with the result that, if the district judge did not chant every magic word correctly, then the case would have to be remanded for resentencing.

In fairness to the majority, a reading of the transcript of the sentencing hearing does demonstrate that the language used by the district judge in deciding to apply the § 3B1.3 upward adjustment is somewhat equivocal as to whether she based the two level increase upon the "use of a special skill" or "abuse of trust" prong:

> MS. DE PAIEWONSKY: The next point is on page four of our comments, Your Honor, under offense level computation, adjustment for the
>
> role in the offense, the guideline which covers position of special skill.
>
> We then understand that the probation officer's position that since Mr. Hickman was licensed and not contrary to what the government attorney has said, he held himself out to be licensed. He was in fact a licensed contractor duly and legitimately licensed under the laws of the Virgin Islands and had been so for a number of years prior to this incident.
>
> We suggest to the Court that the examples that are given in the guidelines as what is complained under this particular factor of special skill are those skills that are highly specialized such as, and the specific examples are given, pilots, lawyers, doctors, accountants, chemists and demolition experts.
>
> And, it gives a negative example that a bank teller who probably as a law person, we would consider certainly a person who occupies a position of trust. It was not — would not occupy a quote, unquote, "position of trust" under these guidelines as are explained.
>
> And, we suggest to the Court that merely because Mr. Hickman was a licensed contractor does not automatically catapult him into this special role of responsibility.
>
> THE COURT: Sorry, counsel. I've had an opportunity to review that. And, *based upon his license as a contractor, his special expertise, these persons trusted him. It was his training and that license, I'm persuaded, that enabled him to perpetrate this scheme.*

He just didn't go out and find somebody to do a few things for them. *They gave him the total responsibity [sic] for the construction of a home. And, he held out his special skill and his license, assuring them that he was qualified and responsible and would do so.*

Without that, I don't think that any of this would have happened. And, he would, based on my research, be an individual that was explained within the guidelines. And, we must adjust upward for that position of special skill.

I think the guidelines make that clear, counsel. So, he gets two points added for that.

Appellee's Supplemental App. at 396-98 (emphasis added). Although the district judge's recitation does not expressly state whether she based the upward adjustment on the "abuse of trust" or "use of a special skill" prong of § 3B1.3 (or both), I find from a fair reading of her statement a sufficient invocation of the abuse of a position of trust to support the increase on that ground.

My conclusion is warranted considering that under this Court's interpretation of § 3B1.3, the position of construction contractor, which Hickman held, placed him in a position of trust, see United States v. Lieberman, 971 F.2d 989, 993 (3d Cir. 1992) ("[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong," quoting United States v. Hill, 915 F.2d 502, 506 (9th Cir. 1990)), and that the sentencing judge adequately explained her determination that Hickman abused such a position, see supra ("It was his training and that license, I am persuaded, that enabled him to perpetrate this scheme."). A construction contractor customarily receives large cash advances from clients to cover future construction costs. There are normally periodic accountings and approvals before the next advance is made. By virtue of his position and their arrangement, the contractor is permitted to use the client's money with the client's expectation that the contractor will use the money in connection with the completion of the project. The sentencing judge here clearly understood this reliance that the clients had placed upon defendant's exercising good faith.

Moreover, under the particular facts of this case, the clients placed an even greater trust upon the contractor's faithful performance of the contract because the clients were not present in the Virgin Islands to inspect the progress being made on the project.

Defendant sent them photographs to establish that construction was moving forward. Unfortunately, the photographs were of someone else's residence. However, the clients relied on the photographs as being an accurate representation of defendant's good faith. In my opinion, these actions of defendant demonstrate a clear abuse of a position of trust. See United States v. Brann, No. 92-7257, slip op. at 11 (3d Cir. March 30, 1993) (abuse of a position of trust present where defendant used his position to facilitate the commission and concealment of his offense).

As the sentencing judge also pointed out, "these people trusted [the defendant]." They gave him the total responsibility to construct their home; he assured them he was qualified and responsible. Therefore, I can only conclude based upon common sense and logic that without such assurances the clients would not have entrusted defendant with the large sums of money given him in advance payment for completion of their residence.

From my own experience as a district judge, I do not believe that you can require exquisite clarity in every pronouncement made from the trial bench. It should be sufficient for the district judge to make clear the reason for applying the upward adjustment and state the grounds upon which the increase in offense level is based. From my review of the record in this case I find that the explanation given by the district judge at the sentencing hearing supports a two level upward adjustment for abuse of a position of trust under § 3B1.3 and satisfies that standard.

For the above reasons, I would not vacate the sentence imposed insofar as it incorporated a two level increase for abuse of a position of trust.