**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lloyd Douglas MOORE, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John James RAWLINS, Defendant–
Appellant.**

Nos. 93–5592, 93–5593.

United States Court of Appeals,
Fourth Circuit.

Argued April 15, 1994.

Decided July 14, 1994.

**ARGUED:** James Patrick Cooney, III, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, David Carl Cordes, Bailey, Patterson, Caddell, Hart & Bailey, P.A., Charlotte, NC, for appellants. Robert James Conrad, Jr., Asst. U.S. Atty., Charlotte, NC, for appellee. **ON BRIEF:** Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellant.

Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge WILKINSON wrote the opinion, in which Senior Judge BUTZNER and Judge DOUMAR joined.

## OPINION

WILKINSON, Circuit Judge:

This case requires us to decide whether a co-conspirator's abuse of a position of trust can be attributed to other members of a conspiracy for purposes of applying an enhancement under § 3B1.3 of the Sentencing Guidelines. We hold that "role in the offense" adjustments, such as abuse of trust enhancements, may not be based on a coconspirator's actions, but must instead result from an individualized determination of each defendant's culpability. Because we find that appellants did not personally hold or abuse any relationship of trust with the victim, we reverse the district court's decision to apply a two-level enhancement to their sentences, and remand for resentencing.

### I.

In the mid–1980s, Oren Johnson was the manager of the Camera/Platemaking Department of the Knight Publishing Company, which publishes The Charlotte Observer. As manager, Johnson had authority to approve invoices for supply purchases for his department. At that time, appellant John James Rawlins was President of Graphic Image, Inc., a printing company that he owned with appellant Lloyd Douglas Moore. In March 1985, Johnson and Rawlins developed a fraudulent scheme in which Rawlins would submit Graphic Image invoices to Knight Publishing for materials and services that were never supplied, and Johnson would approve payment of the false invoices. Upon receipt of payment from Knight Publishing, Rawlins would deposit the check into a Graphic Image account at the First Union National Bank and later divide the money between Johnson and himself. Johnson and Rawlins operated this invoice scheme through Graphic Image from 1985 to 1987, receiving 52 checks from Knight Publishing totalling $400,742.36. Moore joined the conspiracy in 1987.

In June 1987, Moore and Rawlins sold a 50% interest in Graphic Image to parties unaware of the fraudulent activity. At that time, they decided that Graphic Color Prep, a partnership they owned with Carroll Borders, should replace Graphic Image as the vehicle for the invoice scheme. In order to facilitate the scheme, Johnson bought Borders' share of Graphic Color Prep in February 1988. From that time until 1992, Graphic Color Prep issued a number of fraudulent invoices to Knight Publishing for materials and services it purportedly supplied. In return, the partnership received 57 Knight Publishing checks totalling $1,573,641.85.

In June 1992, discrepancies in Johnson's department records prompted the FBI and the IRS to investigate. On December 8, 1992, a federal grand jury indicted Moore, Rawlins, and Johnson on conspiracy, mail fraud, and money laundering charges. Rawlins and Moore agreed to plead guilty to the conspiracy and mail fraud counts in exchange for the government's dismissal of the money laundering charges. Under the plea agreement, the government would recommend that Rawlins and Moore receive a three-level sentencing reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a) & (b)(2). However, the government reserved the right to argue for a two-level enhancement under § 3B1.3 of the Sentencing Guidelines. That enhancement is available if the defendant abused a position of trust or used a special skill to facilitate the commission or concealment of a criminal offense.

The Presentence Reports on Rawlins and Moore in fact recommended a two-level role in the offense enhancement under § 3B1.3 on the ground that they had used their positions of trust in Graphic Image and Graphic Color Prep to facilitate the commission of the offense. Rawlins and Moore argued at sentencing that the § 3B1.3 enhancement was improper because they did not occupy a position of trust with respect to Knight Publishing, the victim in this case. The government responded that the enhancement should be imposed because (1) Johnson, as a member of the conspiracy, occupied a position of trust with respect to Knight Publishing, and Rawlins and Moore were derivatively liable for the enhancement, and (2) appellants used their special skill in printing to facilitate the commission of the offense. The district court applied a two-level § 3B1.3 enhancement to both defendants. The court then sentenced Rawlins and Moore to 54 months imprisonment and three years of supervised release. The court also ordered restitution to Knight Publishing in the amount of $410,130.95 for Moore, and $327,355.33 for Rawlins.

Rawlins and Moore now appeal, arguing that the two-level enhancement was not proper on either the abuse of trust or special skills prongs of § 3B1.3. We address each issue in turn.

## II.

### A.

■ Section 3B1.3 of the Sentencing Guidelines provides, in relevant part, that

[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase [the base offense level] by 2 levels.

U.S.S.G. § 3B1.3. The government contends that the district court properly enhanced appellants' sentences under § 3B1.3 on the ground that their co-conspirator, Johnson, occupied and abused a position of trust at Knight Publishing. In making this argument, the government relies on the *Pinkerton*[1] principle embodied in § 1B1.3(a) of the Sentencing Guidelines. Section 1B1.3(a) provides that in the case of a jointly undertaken criminal activity,

[u]nless otherwise specified, ... adjustments in Chapter Three[ ] shall be determined on the basis of ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity....

---

1. *Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184–85, 90 L.Ed. 1489 (1946) (holding that a conspirator is criminally liable for the acts of other members of the conspiracy that were taken in furtherance of the conspiracy and reasonably foreseeable as a necessary and natural consequence of the conspiracy).

U.S.S.G. § 1B1.3(a)(1)(B). Because Johnson's abuse of his position of trust was both (1) reasonably foreseeable to Rawlins and Moore and (2) taken in furtherance of the jointly undertaken invoice scheme, the government argues that the district court properly enhanced appellants' sentences on the basis of Johnson's abuse of trust, regardless of whether the appellants themselves abused any position of trust.

■ We disagree. As an initial matter, the *Pinkerton* principle of § 1B1.3 does not apply to the abuse of trust provision in § 3B1.3. By its own terms, § 1B1.3 holds a defendant responsible only for reasonably foreseeable "acts and omissions" of his co-conspirators; it does not permit attribution of a co-conspirator's status to the defendant being sentenced. Accordingly, § 1B1.3 permits courts to attribute to the defendant a co-conspirator's possession of a firearm, *see United States v. Bianco*, 922 F.2d 910, 911–12 (1st Cir.1991) (applying § 1B1.3 to § 2D1.1(b)(1)'s dangerous weapon enhancement), as well as the amount of drugs that a co-conspirator manufactured or distributed, *see United States v. Irvin*, 2 F.3d 72, 77–78 (4th Cir.1993). Indeed, in this case, Rawlins and Moore were rightly held responsible for all reasonably foreseeable acts of the conspiracy; their sentences were properly increased by 12 levels under § 2F1.1(b)(1) to reflect the amount of money received by all members of the conspiracy, $1,974,384.20, even though they individually received less than $500,000 each. However, unlike the possession of firearms, distribution of drugs, or receipt of money, which are all properly attributable *acts*, the abuse of trust enhancement is premised on the defendant's *status* of having a relationship of trust with the victim. *See United States v. Hickman*, 991 F.2d 1110, 1112 (3d Cir.1993). *See also* U.S.S.G. § 2G2.1 (providing an enhancement for crimes related to sexual exploitation of a minor if the defendant's status is that of "a parent, relative, or legal guardian of the minor involved in the offense"); U.S.S.G. § 2P1.1 (enhancing the base offense level for assisting escape if the defendant holds a position as a law enforcement officer at the time of the offense). A co-conspirator's status cannot be attributed to other members of the conspiracy under § 1B1.3.

Even if § 1B1.3 did extend to a co-conspirator's status, we would still hold that abuse of trust is not attributable to co-conspirators because the abuse of trust provision falls under an exception to § 1B1.3. Section 1B1.3 expressly provides that it does not apply to a guideline provision if "[o]therwise specified" by that provision. It is clear that § 3B1.3 "specifie[s]" that abuse of trust enhancements be individualized, not based on the acts of co-conspirators.

First, the abuse of trust provision of § 3B1.3 specifically states that the two-level enhancement will apply if "*the defendant* abused a position of public or private trust." U.S.S.G. § 3B1.3 (emphasis added). Such defendant-specific language invites a finding that the defendant being sentenced abused a position of trust before the enhancement may be applied. By contrast, the sentencing provisions that incorporate § 1B1.3's *Pinkerton* principle specifically permit the enhancement to be based on the acts of others, *see, e.g.,* U.S.S.G. § 3A1.2(b) (applying an enhancement if "the defendant or a person for whose conduct the defendant is otherwise accountable" knew that the victim was a law enforcement officer), or use general and often passive language lacking any defendant-specific reference, *see, e.g.,* U.S.S.G. § 2D1.1(b)(1) (providing an enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug offense). By way of further illustration, the obstruction of justice provisions which immediately follow the role in the offense adjustments explicitly hold defendants accountable not only for their own conduct, but also for conduct of others falling under the *Pinkerton* principle. *See* U.S.S.G. § 3C1.1, Application Note 7; U.S.S.G. § 3C1.2, Application Note 5. Neither the text nor the application notes of § 3B1.3, however, contains any such language. If the abuse of trust provision were intended to incorporate the *Pinkerton* principle, it would have (1) suggested that an abuse of trust by the defendant's agent or co-conspirator was sufficient for enhancement, or (2) stated more generally that the enhance-

ment would apply if a position of trust was abused during the commission of the offense.

Second, it would undermine the very purpose of the abuse of trust provision to hold that a defendant may receive an enhancement even if that defendant did not personally satisfy the requirements of § 3B1.3. The commentary to § 3B1.3 explains that the two-level enhancement "applies to persons who abuse their positions of trust" because "[s]uch persons generally are viewed as more culpable." U.S.S.G. § 3B1.3, Background. In other words, if one member of a conspiracy takes criminal advantage of a position of trust, the guidelines view that person as deserving of greater punishment than coconspirators who did not. Assessing an abuse of trust enhancement against all co-conspirators fails to distinguish their respective levels of culpability, and attributes to all co-conspirators the exceptional malfeasance of one.

Finally, the structure of the sentencing guidelines compels the conclusion that the abuse of trust enhancement must be based on an individualized determination of each defendant's culpability. Part B of Chapter Three of the Sentencing Guidelines contains three sections that "provide[ ] adjustments to the offense level based upon the role *the defendant* played in committing the offense." U.S.S.G. Chapter Three, Part B, Introductory Commentary (emphasis added). In addition to the enhancements in § 3B1.3, Part B permits sentencing adjustments based on (1) whether a particular defendant was an organizer, leader, manager or supervisor of group criminal activity, *see* U.S.S.G. § 3B1.1, and (2) whether the defendant was a minor or minimal participant in the criminal activity, *see* U.S.S.G. § 3B1.2. These roles in the offense provisions were designed to permit sentencing judges to make individualized distinctions among defendants engaged in a criminal enterprise. *See United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir.1989). By their very nature, the role in the offense adjustments cannot be based upon the actions of co-conspirators; for example, a defendant who was not the organizer of criminal activity could not receive a role enhancement merely because it was reasonably fore-

seeable that a co-conspirator would organize a criminal scheme.

Given the inherently individualized nature of role in the offense adjustments, it is not surprising that the government cannot point to a single example in the seven pages of application notes accompanying § 1B1.3, or to any case, in which a defendant received a role in the offense adjustment, much less an abuse of trust enhancement, on the basis of the acts of a co-conspirator. Instead, the case law refutes the government's view. In *United States v. Johnson*, 4 F.3d 904, 916–17 (10th Cir.1993), for example, four defendants were convicted of conspiracy to commit bank robbery, yet the court applied an abuse of trust enhancement to only one of them—the bank vault teller. The *Johnson* court did so even though an abuse of trust was foreseeable (indeed, planned) and committed in furtherance of the offense. *See also United States v. Innamorati*, 996 F.2d 456, 489–90 (1st Cir.1993) (upholding an abuse of trust enhancement imposed on one of ten defendants involved in a conspiracy to distribute cocaine). The abuse of trust enhancement thus cannot be attributed to defendants in the manner that the government suggests.

### B.

■ Having held that an individualized inquiry into each defendant's abuse of trust is necessary for a proper § 3B1.3 enhancement, we next turn to the question of whether Rawlins and Moore personally held and abused positions of trust. An enhancement for abuse of trust requires the government to prove that (1) the defendant occupied a position of trust, and (2) "the position of trust ... contributed in some significant way to facilitating the [crime]." U.S.S.G. § 3B1.3, Application Note 1. *See United States v. Queen*, 4 F.3d 925, 927 (10th Cir.1993); *United States v. Gould*, 983 F.2d 92, 94 (7th Cir.1993). The government contends that the enhancement was appropriate here because Rawlins and Moore abused their positions of trust at Graphic Image and Graphic Color Prep in order to carry out the fraudulent invoice scheme.

■ Again we disagree. It is well-established that "the question of whether an

individual occupies a position of trust should be addressed from the perspective of the victim." *Queen,* 4 F.3d at 929; *see also United States v. Booth,* 996 F.2d 1395, 1396 (2d Cir.1993); *United States v. Hill,* 915 F.2d 502, '506 n. 3 (9th Cir.1990). There must be "a trust relationship between [the defendant] and his victim" for the enhancement to apply. *See United States v. Hickman,* 991 F.2d 1110, 1112 (3d Cir.1993). Here, the fact that Rawlins and Moore may have occupied positions of trust at Graphic Image and Graphic Color Prep does not govern our § 3B1.3 analysis because Knight Publishing, not the Graphic entities, was the victim in this case.[2] From the perspective of Knight Publishing, Johnson alone occupied and abused a position of trust as departmental manager; Rawlins and Moore did not possess a position of trust that permitted them the freedom to commit a "difficult-to-detect" wrong. *Hill,* 915 F.2d at 506. Rather, Knight Publishing had nothing more than a standard buyer-seller relationship with Rawlins and Moore in which it ordered and paid for merchandise and services. Because ordinary commercial relationships do not constitute a trust relationship sufficient to invoke the § 3B1.3 enhancement, *see United States v. Kosth,* 943 F.2d 798, 800 (7th Cir.1991), we hold that Rawlins and Moore did not abuse a position of trust with respect to the victim in this case, and that the § 3B1.3 enhancement is therefore not available on this basis.

### III.

The government next contends that the § 3B1.3 enhancement was proper on the ground that Rawlins and Moore used a special skill to facilitate the commission of the offense. The Sentencing Guidelines provide that a defendant may receive a two-level enhancement if he "used a special skill[ ] in a manner that significantly facilitated the commission or concealment of the offense...." U.S.S.G. § 3B1.3. Special skill is defined as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, Application Note 2.

The district court found, and the appellants do not dispute, that Rawlins and Moore possessed special skills in printing. However, there exists a substantial factual dispute as to whether their printing skills significantly facilitated the commission or concealment of the fraudulent invoice scheme: the government contends that their specialized printing skills were necessary to generate the fraudulent invoices, whereas the appellants contend that the invoices were standard corporate forms requiring no specialized knowledge of the printing industry. The district court made no finding on this point. We thus remand with directions that the district court make an appropriate factual finding as to whether—and, if so, how—Rawlins' and Moore's printing skills significantly facilitated either the commission or concealment of the fraudulent invoice scheme, and to resentence appellants accordingly.

### IV.

For the foregoing reasons, we reverse the district court's decision to enhance appellants' sentences for abuse of positions of trust under § 3B1.3, and remand with directions that the court make appropriate factual findings as to the special skills enhancement.

*REVERSED AND REMANDED.*

---

**2.** The government concedes that Knight Publishing was the "primary victim" in this case, but argues that Graphic Image and Graphic Color Prep were "secondary victims" of the conspiracy. The problem with this argument is that the government presented no evidence that these alleged "secondary victims" suffered any harm as a result of appellants' invoice conspiracy scheme. Indeed, the presentence report, which the district court adopted, identified Knight Publishing as the only victim in this case.