69 F.3d 534
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lyndell THOMAS, a/k/a X-Man, Defendant-Appellant.
 No. 94-5529.
 United States Court of Appeals, Fourth Circuit.
 Oct. 30, 1995.
 
 Robert D. Jacobson, Lumberton, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Peter J. Curtin, Special Assistant United States Attorney, Fort Bragg, North Carolina, for Appellee.
 Before HAMILTON and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 As the result of a Government undercover operation, Appellant Lyndell Thomas ("Lyndell"), and his two brothers, Odell and Wendell, were charged with conspiracy to distribute crack cocaine in violation of 21 U.S.C. Sec. 846 (1988). Each Defendant was also charged with substantive offenses. Lyndell was charged with two counts of crack cocaine distribution in violation of 21 U.S.C. Sec. 841(a)(1) (1988). Following a jury trial, the Defendants were convicted on all charges. Lyndell was sentenced to 262 months imprisonment on the conspiracy charge and two concurrent terms of 262 months for the substantive offenses. Lyndell was also sentenced to ninety-six months supervised release and ordered to pay a special assessment. Lyndell appeals, and we affirm.
 
 
 2
 On April 23, 1993, agents of the U.S. Army Criminal Investigation Division and the Fayetteville Police Department began a joint investigation into cocaine trafficking near the Fort Bragg Military Reservation. The agents initially targeted Odell Thomas, whom a confidential source had identified by the nicknames "O.D." and "Owens."
 
 
 3
 Federal undercover agents entered the target area around 11:30 p.m. on April 23, 1993. The agents approached an unidentified male and asked for Odell Thomas. Wendell Thomas stepped forward and asked the agents if he could help them. After a brief discussion, Wendell agreed to sell the agents $100 worth of crack cocaine. On April 28, the undercover agent involved in the April 23 cocaine purchase viewed photographs provided by the Fayetteville police and identified Wendell Thomas as the man who sold him the crack.
 
 
 4
 The agents returned to the target area to make another purchase from Wendell. They asked for Wendell by name; however, Odell Thomas approached the agents and agreed to sell them $300 worth of crack cocaine. After the sale, the seller identified himself to the agents as Odell Thomas, "Wendell's brother," and stated that the agents could make any future purchases from either Wendell or him.
 
 
 5
 Following that purchase, one of the federal agents again viewed photographs provided by the local police and identified Odell Thomas as the man who sold the crack cocaine. The agent also mistakenly identified a Damien Melvin as the person who assisted in the transaction.
 
 
 6
 The agents next contacted Odell on May 14. Odell agreed to sell them $190 worth of crack cocaine. The agents asked how they could contact him more easily to arrange larger drug transactions, and Odell gave them two pager numbers. He stated that one number was his, and the other belonged to his brother, Wendell.
 
 
 7
 An agent contacted Wendell Thomas on May 20 to purchase approximately one and a half ounces of crack cocaine. During the conversation, Wendell handed the telephone to his brother Odell, who spoke with the agent to confirm the details of the transaction. However, the sale fell through later that evening, when Odell was unable to supply the amount of crack requested. Both Odell and Wendell were present at that unsuccessful transaction.
 
 
 8
 On May 25, agents paged Wendell to arrange another cocaine purchase. Odell returned their call, and agreed to meet them that evening on Preston Street. Odell sold the agents $650 worth of crack cocaine that night.
 
 
 9
 The agents next paged Wendell on June 9 to arrange a cocaine purchase. A man claiming to be Wendell, but later identified as Appellant Lyndell Thomas, returned the agents' call. The agents arrived in the target area around 3:40 p.m. and met an unfamiliar man who at first insisted that he was Wendell. When questioned by the undercover agents, he identified himself as Lyndell Thomas, stated that he had called the agents, and that he could make the sale because he was Wendell's brother. Lyndell was dressed in his work uniform, and showed the agents an identification card from Con-star LP Food Services (the company that services the food halls at Fort Bragg) to prove his identity to the agents. Lyndell negotiated with the agents, and agreed to make a sale.
 
 
 10
 On July 13, the undercover agents met Lyndell at a mess hall on Fort Bragg. During their ten minute conversation, they agreed to meet Lyndell the next day to purchase crack cocaine. On July 14, the agents met Lyndell around 12:30 p.m. and bought $400 worth of crack cocaine. Wendell was also present in the area during that sale.
 
 
 11
 For the final transaction, the federal agents contacted Wendell on July 16 to arrange a sale. The agents planned to arrest Wendell after this sale. The agents arrived at the agreed upon location at 2:00 p.m. As the arresting officers approached, Wendell grabbed the cocaine and money from the undercover agents and fled. He was apprehended after a short chase, with the cocaine and money in his hand. Laboratory analysis later confirmed that the Defendants sold a total of 35.8 grams of crack cocaine to the undercover agents.
 
 
 12
 In reviewing a conviction based on a challenge to the sufficiency of the evidence, we must uphold a jury verdict if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992). The government enjoys the benefit of all reasonable inferences from the facts proved to facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). The issue turns on whether there is substantial evidence in the record to support the jury's findings. United States v. Stockton, 788 F.2d 210, 218 (4th Cir.), cert. denied, 479 U.S. 840 (1986) (citations omitted).
 
 
 13
 To sustain a conspiracy conviction, the evidence must show only that the defendant knew of the conspiracy's purpose and took some action reflecting his participation. United States v. Locklear, 24 F.3d 641, 644 (4th Cir.), cert. denied, 63 U.S.L.W. 3266 (U.S.1994); United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S.1992). The government may use circumstantial evidence to demonstrate a defendant's participation in a conspiracy and his knowledge of the conspiracy's objectives. Glasser, 315 U.S. at 80. If the defendant " 'joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy.' " United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992) (quoting United States v. Roberts, 881 F.2d 95, 101 (4th Cir.1989)).
 
 
 14
 In this case, the Government offered ample evidence that a conspiracy existed, and that Lyndell knew about it and acted to further it. The May 20th telephone conversation between a Government agent and Odell and Wendell provides the most damning evidence of the conspiracy. During that conversation, Odell and Wendell were together and spoke with the agent about arranging the sale of an ounce or more of crack cocaine. Odell and Wendell were both present at the scene of the proposed transaction. Moreover, Odell introduced himself to the undercover agents on April 28 as "Wendell's brother," and stated that either he or his brother Wendell could provide them with any cocaine they needed. Odell also gave the agents his pager number and Wendell's pager number for future cocaine sales. Odell answered Wendell's pager on May 25 and arranged a cocaine sale. All of these facts provide ample evidence from which a jury could find that a conspiracy existed.
 
 
 15
 The Government also presented evidence linking Lyndell to the conspiracy. Lyndell answered Wendell's pager on July 9, and arranged a cocaine sale while pretending to be Wendell. When he was questioned by the undercover agents, he relied on his relationship with his brothers to establish his credentials. The brothers sold crack cocaine from the same city block, answered each others' messages, and vouched for each other as drug sources. We have upheld conspiracy convictions based upon more attenuated associations with the conspiracy than are present in this case. See, e.g., Locklear, 24 F.3d at 645; United States v. Baker, 985 F.2d 1248 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3451 (U.S.1994). Thus, viewing the evidence in the light most favorable to the Government, the evidence demonstrates that each brother knew of and acted to further the conspiracy. Therefore, the jury's findings are supported by the evidence of record.
 
 
 16
 Lyndell also asserts that his conviction on the conspiracy charge cannot stand because he was incarcerated on the date mentioned in Count One of the indictment. That count charges that the conspiracy in this case occurred "on or about April 23, 1993." The Government conceded that Lyndell was in jail from March 3, 1993, until May 1, 1993. However, Lyndell may be convicted even though he joined the conspiracy after it began. See generally United States v. Moore, 29 F.3d 175, 176-78 (4th Cir.1994) (defendant who joined conspiracy two years after inception held liable for all reasonably foreseeable acts of co-conspirators).
 
 
 17
 Once a conspiracy is shown to exist, "the evidence need only establish a slight connection between the defendant and the conspiracy to support a conviction." Brooks, 957 F.2d at 1147 (citations omitted). Further, a "defendant may be convicted despite having played only a minor role in the overall conspiracy." Id. The evidence at trial revealed that Lyndell answered Wendell's pager to arrange a drug transaction, and that Odell gave the agents that same pager number. Lyndell acknowledged that he called the agents, and assured them that it was acceptable to buy from him because he was "Wendell's brother." Thus, Lyndell's acts in June and July 1993 demonstrate that he participated in the ongoing conspiracy.
 
 
 18
 Lyndell also contends on appeal that his conspiracy conviction must be reversed because the Government did not prove that he actually conspired on the precise date listed in the indictment (April 23, 1993). His argument seems to be that there was a fatal variance between the indictment and the proof adduced at trial. That contention is without merit.
 
 
 19
 An indictment and each count within it must be sufficient to give a defendant notice of the charge so that he can defend against it and plead an acquittal or conviction as a bar to a subsequent effort to prosecute him for the same offense. Fed.R.Crim.P. 7(c)(1). Here, the indictment provides an approximate time frame for the crime (early 1993), and identifies the place of the conspiracy, two co-conspirators, the controlled substance involved, and the statutes violated. Thus, Count One provided Lyndell with sufficient notice of the crime charged. The evidence adduced at trial proved an ongoing conspiracy from at least April 23 through July 16, 1993. Lyndell knew the charges against him and testified and presented a vigorous defense. Thus, the variance between the proof and the indictment is not fatal to his conviction. United States v. Barsanti, 943 F.2d 428, 438 (4th Cir.1991) (court should disregard a variance if it does not affect the substantial rights of the defendant), cert. denied, 503 U.S. 936 (1992); Fed.R.Crim.P. 52(a).
 
 
 20
 Lyndell next contends that there was insufficient evidence to support his convictions on two counts of distribution of crack cocaine. That argument also fails.
 
 
 21
 We must review the evidence concerning the substantive counts in the light most favorable to the Government, United States v. Madden, 38 F.3d 747, 751 (4th Cir.1994), and must honor the credibility choices of the jury. United States v. Arrington, 719 F.2d 701, 704 (4th Cir.1983), cert. denied, 465 U.S. 1028 (1984).
 
 
 22
 As to Count Six, two Government agents testified that Lyndell answered their call to Wendell on June 9, 1993. The agents testified that Lyndell arranged the drug sale over the telephone, and then sold them crack cocaine after identifying himself by name and showing the agents his identification card. While there was conflicting testimony on this issue, the Government's evidence showed that the transaction occurred around 3:40 p.m., which gave Lyndell ample time to arrive at work by 4:15 p.m. We therefore affirm Lyndell's conviction as to Count Six.
 
 
 23
 On Count Seven, the agents testified that they met Lyndell at his workplace on July 13 and talked with him for ten to fifteen minutes to arrange the sale. The agents testified that Lyndell again sold them crack cocaine on July 14, at the same location as the first sale. Based upon that evidence, we affirm Lyndell's conviction on Count Seven.
 
 
 24
 Lyndell testified on his own behalf and denied all of the allegations against him. He presented documentary evidence and a stipulation of fact on his behalf. The jury determined that the Government's evidence was more credible. Because substantial evidence exists to support the jury's findings, we will not be disturb them on appeal. United States v. Stockton, 788 F.2d 210, 218 (4th Cir.), cert. denied, 479 U.S. 840 (1986).
 
 
 25
 Finally, although we grant Lyndell's motion to submit a pro se supplemental brief, we find that his claims are meritless. First, Lyndell asserts in general terms that the opening and closing statements and the jury instructions contained improprieties, and that he was denied a copy of the transcript to support this contention. Pursuant to this court's transcript plan, these portions of the transcript are not available under the payment plan established by the Criminal Justice Act. See Guidelines for Preparation of Appellate Transcripts in the Fourth Circuit, Sec. II(b)(8). Because Lyndell does not give any specifics to support this claim, we will not order preparation of the transcript. Cf. 28 U.S.C. Sec. 753(f) (1988).
 
 
 26
 Lyndell makes various assertions that Government witnesses committed perjury to obtain his conviction. However, as noted above, the jury's determination regarding witness testimony is not reviewable absent exceptional circumstances not present here. Arrington, 719 F.2d at 704. This claim, too, is meritless.
 
 
 27
 Finally, Lyndell asserts that he did not receive effective assistance of counsel, including a claim that his attorney failed to call a witness suggested by Lyndell to provide an alibi. However, this claim is not reviewable on direct appeal unless the alleged ineffectiveness conclusively appears on the face of the record. Because it does not appear on this record that counsel was ineffective, this claim is not reviewable. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991), cert. denied, 503 U.S. 997 (1992).
 
 
 28
 Accordingly, we affirm Lyndell's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 29
 AFFIRMED.