**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4141

JAMES ANDREW KEHOE, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-97-322-A)

Argued: January 28, 1999

Decided: April 2, 1999

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Marvin David Miller, LAW OFFICES OF MARVIN D.
MILLER, Alexandria, Virginia, for Appellant. Thomas Higgins
McQuillan, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Helen F. Fahey, United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Andrew Kehoe, III pleaded guilty to charges of interstate transportation of money obtained by fraud, in violation of 18 U.S.C. § 2314, and was sentenced to thirty-eight months imprisonment. On appeal he contends that the district court improperly precluded the use of evidence of diminished capacity because of his late filing of notice of this defense. He further objects to sentence enhancements imposed by the court for "unusually vulnerable victim" and "abuse of position of trust." We affirm.

I.

Kehoe was an insurance agent for Jackson National Life Insurance Company ("JNLIC") and sold annuity policies on its behalf. He was charged, in a four-count indictment, of defrauding a longtime client, a seventy-four year old woman, of approximately $84,500. On four separate occasions, from July 1993 to January 1995, Kehoe received investment funds from this client earmarked for the purpose of buying JNLIC annuity policies. He did not forward the money to JNLIC (and thus failed to have JNLIC issue the policies), but instead deposited it in a bank account he controlled.[1]

At sentencing the district court also considered that Kehoe had defrauded two other clients. In six transactions from September 1992 to November 1994, Kehoe collected approximately $183,000 from a second client, a seventy-eight year old woman, for the purchase of JNLIC annuities. He also deposited this money into his own bank account.[2] Finally, Kehoe misappropriated approximately $268,000

_____

[1] JNLIC made this victim whole and therefore bears the financial loss in this case.
[2] JNLIC also made this victim whole.

2

from a third client, an eighty-four year old man. He caused securities from that client's account to be redeemed and transferred the proceeds into his own bank account. He used some of these proceeds to partially repay the second victim in this case and retained approximately $116,000 for his own purposes.

At arraignment the district court ordered that pretrial motions would be heard on October 24, 1997, and set the trial for November 4, 1997. Kehoe subsequently moved for, and was granted, a continuance of his trial date to November 24, but his lawyer specifically told the court that no change was needed to the October 24 motions hearing date.

By October 24 Kehoe had not filed a notice pursuant to Federal Rule of Criminal Procedure 12.2 of his intent to introduce expert testimony regarding his mental condition. The government therefore made a motion on November 5, 1997, to preclude an insanity defense, or in the alternative, to order a psychiatric examination of Kehoe. The court denied this motion. On November 14, 1997, ten days before trial, Kehoe moved for an extension of time for filing a Rule 12.2 notice. The Rule 12.2 notice was tendered with the motion for extension. The district court denied the motion and ruled that Kehoe was precluded from offering evidence of his diminished capacity at trial.

Kehoe then pleaded guilty on all counts.**3**  The district court sentenced him to a term of thirty-eight months imprisonment. In calculating this sentence, the court applied a two-point increase for "vulnerable victim" pursuant to U.S.S.G. § 3A1.1(b) and a two-point increase for "abuse of position of trust" pursuant to U.S.S.G. § 3B1.3. Kehoe appeals.

II.

The district court did not abuse its discretion in precluding the psychiatric evidence proffered by Kehoe.

---

**3** Kehoe made a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), preserving his right to appeal the district court's ruling that precluded his use of testimony from a psychiatric expert.

3

A defendant who intends to introduce expert testimony relating to his mental condition must provide written notice to the government within the time provided for filing pretrial motions or face possible exclusion of that evidence at trial. Fed. R. Crim. P. 12.2(b), (d). This requirement gives the government time to prepare for cross-examination of the defendant's expert witnesses and to arrange for any rebuttal witnesses without delaying the trial. See Fed. R. Crim. P. 12.2 advisory committee's notes. Of course, courts have discretion, upon a showing of cause, to allow the late filing of the notice or to grant the parties additional time to prepare for trial. Fed. R. Crim. P. 12.2(b).

We conclude that the district court did not abuse its discretion by refusing to allow the late filing and by precluding the use of the evidence. To establish cause for the late filing of a Rule 12.2 notice, a defendant must satisfy a two-prong test. He must provide (1) an explanation for the late filing and (2) some evidence that the asserted defense may prevail. Government of the Virgin Islands v. Knight, 989 F.2d 619, 628 (3d Cir. 1993); United States v. Duggan, 743 F.2d 59, 80 (2d Cir. 1984). The district court held that Kehoe failed on both prongs. First, it rejected Kehoe's explanation for the late filing and found that allowing the late filing would require a further continuance of the trial. This concern about delay was one of the reasons for the adoption of Rule 12.2. See Fed. R. Crim. P. 12.2 advisory committee's notes. Second, the court concluded that the proffered evidence would not necessarily negate specific intent on Kehoe's part.[4] The district court did not abuse its discretion in precluding this evidence.

_____

[4] Kehoe's subsequently filed written proffer confirms this analysis. Kehoe indicated that two expert witnesses would testify regarding the combined effects of abusing alcohol and taking prescription anti-depressant drugs. These witnesses would testify that "an individual" who takes such a mixture would experience severe impairment in judgment and an impaired ability to formulate and execute plans. However, none of this demonstrates that Kehoe lacked a specific intent to defraud. Indeed, the district court expressed concern that it "presents an inherent danger that it would distract the jury from focusing on the actual presence or absence of intent, and it opens up wider usage to the jury more akin to justification, and I don't think the evidence if believed would support a legally acceptable theory of mens rea."

III.

Kehoe next challenges two sentence enhancements applied by the district court. The court included a two-level increase for "vulnerable victim" pursuant to U.S.S.G. § 3A1.1(b) and a two-level increase for "abuse of position of trust" pursuant to U.S.S.G. § 3B1.3. We affirm on both points.

A.

The Sentencing Guidelines provide for a two-level increase if the defendant "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b). We have held that a court must make two findings before applying a "vulnerable victim" enhancement. First, the court must find that the victim was "more susceptible to abuse from a perpetrator than most other potential victims of the particular offense." United States v. Singh, 54 F.3d 1182, 1191 (4th Cir. 1995). Second, it must find that the defendant targeted the victim because of that vulnerability. Id.

Here, the district court concluded:

> Insofar as vulnerable victim is concerned, I find that these three persons were vulnerable and unusually so, and that they were targeted because of that. Their ages range from 74 to 84. It's singular that this man -- he may not have had any other clients, but these are the ones he sought out, and their age and their vulnerability clearly played a part in the defendant's selection of them and in the crime that he committed.

The district court did not err by applying a vulnerable victim enhancement to Kehoe's sentence. Section 3A1.1 of the Guidelines lists age as the first example of unusual vulnerability. All of the victims were elderly and invested portions of their life savings with Kehoe. Indeed, one of the victims said, "Mr. James Kehoe, my former broker, was handling my accounts since I am 85 years old and don't understand my monthly statements." Although the district court's

5

findings of fact might have been stronger with some amplification, we cannot say that the court erred in finding that the victims were unusually vulnerable and that Kehoe targeted them for that reason.

B.

Section 3B1.3 of the Guidelines provides for a two-level increase if a defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The defendant must occupy a position of trust with respect to the victim of the crime. United States v. Moore, 29 F.3d 175, 179-80 (4th Cir. 1994). Ordinary commercial relationships do not rise to the level of a position of trust. Id. at 180.

The district court concluded:

> I also think that there is warranted a two-level increase for abuse of trust. This defendant not only abused the trust of these victims, because he was their investment advisor, but he abused the trust of the insurance company.
>
> He -- and that trust enabled him to commit the crime and made it harder to detect. He was in a position where the insurance company thought he was going to do what he was supposed to do, that is, remit payments to them, and the victims thought he was going to remit the payment they made to him to the insurance company. It wasn't until later that they found out that he had done -- they both found out that he had not done what he was supposed to.
>
> Clearly, he was in a position of trust, and clearly that position enabled him to commit the crimes.

We find no error in the district court's determination. Kehoe abused his position of trust as a financial advisor to his clients, taking money that had been entrusted to him for the purchase of annuities. The ongoing relationship of trust with these clients distinguishes this from ordinary commercial dealings. On virtually identical facts, the

6

Tenth Circuit held that this conduct by an insurance agent "was plainly an abuse of trust by a fiduciary." United States v. Trammell, 133 F.3d 1343, 1355-56 (10th Cir. 1998). We also agree that Kehoe abused his position of trust with JNLIC. The insurance company should be deemed a victim of the crime for purposes of sentencing because it bore the financial loss of Kehoe's fraud after making whole the two clients whose monies were not applied to the purchase of JNLIC annuities. See United States v. Blake, 81 F.3d 498, 503-04 (4th Cir. 1996) (treating both individual cardholders and credit card issuers as victims for sentencing purposes on credit card fraud charges). Kehoe served as an independent agent for JNLIC and had broad discretion, with only minimal supervision, to sell policies and collect initial premium payments from customers. He abused this position of trust to commit the fraud.

C.

Finally, we reject Kehoe's contention that the application of sentence enhancements for "vulnerable victim" and "abuse of position of trust" resulted in impermissible double counting. These two adjustments relate to different conduct by Kehoe and serve different purposes. Cf. Singh, 54 F.3d at 1193 n. 7 (rejecting use of both provisions when victims were vulnerable solely because defendant, a doctor, was in a position to violate their trust). The vulnerable victim adjustment related to Kehoe's conduct in selecting and targeting elderly people. The adjustment for abuse of position of trust was for abusing the trust of his clients, who were in need of financial services, and of his principal (JNLIC), who gave him broad discretion. Therefore, the use of both provisions does not constitute double counting.

IV.

Kehoe's conviction and sentence are affirmed.

AFFIRMED