**UNITED STATES of America**

v.

**James LENEGAN a/k/a Boo**

**James Lenegan, Appellant.**

Nos. 09–1339, 09–3730.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) April 26, 2011.

Filed: April 26, 2011.

Joseph T. Labrum, III, Esq., Office of United States Attorney, Philadelphia, PA, Daniel A. Velez, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Gavin P. Holihan, Esq., Allentown, PA, for Appellant.

Before: BARRY, HARDIMAN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

James Lenegan appeals from the District Court's denial of evidentiary motions and its judgment of sentence. We will affirm.

### I

Because we write for the parties, we recount only the essential facts.

In November of 2007, Lenegan was indicted on charges stemming from his role in a conspiracy to burglarize pharmacies and distribute stolen drugs. According to the Government, the conspiracy involved at least eleven individuals who, between December 2002 and June 2005, burglarized thirty-three pharmacies and attempted thirteen more burglaries throughout Pennsylvania, New Jersey, and Delaware. Lenegan was charged with conspiracy and two counts of burglary and drug distribution arising from break-ins at the Glen Center Pharmacy in Ambler, Pennsylvania, and the Oxford Valley Pharmacy in Levittown, Pennsylvania. At the close of trial, the jury found Lenegan guilty of conspiracy as well as the burglary and distribution counts relating to the Oxford Valley Pharmacy burglary. It found him not guilty of the counts relating to the Glen Center Pharmacy.

## II

Lenegan challenges five rulings by the District Court, three of which relate to the guilt phase, and two of which relate to sentencing. We address these arguments and the applicable standards of review in turn.

### A

Before standing trial in this case, Lenegan was in custody on unrelated charges, during which time he participated in a proffer session without counsel present, without signing a proffer letter, and without the benefit of *Miranda* warnings. Lenegan moved to suppress statements made during the proffer session. The District Court conducted a thorough "totality-of the circumstances" review and determined that, although the statements were inadmissible in the Government's case-in-chief because of the *Miranda* violation, they were nevertheless made voluntarily and could be used to rebut contrary testimony if Lenegan took the stand at trial. In this appeal, Lenegan argues his statements should have been suppressed for all purposes, including impeachment, because they were involuntary.[1]

We review de novo the District Court's ruling on the voluntariness of a statement made to law enforcement, and we review the Court's findings of fact for clear error. *United States v. Swint*, 15 F.3d 286, 288 (3d Cir.1994) (citing *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

We evaluate the voluntariness of Lenegan's statements based on the totality of the circumstances to determine whether "the confession was the product of an essentially free and unconstrained choice by its maker, that it was the product of a rational intellect and a free will and that the appellant's will was not overborne." *Id.* at 289 (citations omitted) (internal quotation marks omitted). Relevant circumstances include: "police coercion; the length of the interrogation; its location; its continuity; the defendant's maturity; education; physical condition; and mental health," as well as whether police "advise[d] the defendant of his rights to remain silent and to have counsel present." *Id.* (quoting *Withrow v. Williams*, 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993)) (citations omitted).

In its ruling on Lenegan's motion to suppress, the District Court made the following findings of fact, none of which is clearly erroneous. At the time of the proffer session, Lenegan was forty years old and in good physical and mental health. The proffer session was held in a conference room, lasted for one hour, and terminated when Lenegan requested they break for lunch. As to Lenegan's education level, experience, and maturity, the Court found that he is a high school graduate who has had extensive interaction with the criminal justice system. Moreover, the law enforcement officers present during the session were in plain clothes and carried no visible weapons. Finally, the Assistant United States Attorney made concerted efforts to have Lenegan's attorney present, and when it was apparent that counsel would not attend, the AUSA both

---

1. Lenegan does not dispute that un-*Miranda*-dized statements may be used to impeach, as long as they were made voluntarily. *See Oregon v. Elstad*, 470 U.S. 298, 307–08, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) ("Despite the fact that patently *voluntary* statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination." (citing *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971))); *Oregon v. Hass*, 420 U.S. 714, 723–24, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

allowed Lenegan to speak with counsel on the phone and explained the nature of the proffer session himself. Based on these facts, we agree with the District Court's determination that Lenegan's statements during the proffer session were voluntary and were thus admissible for impeachment purposes.

B

Before trial, Lenegan stipulated to the basic facts surrounding forty-four of the burglaries and attempted burglaries. The stipulation contained anticipated testimony from upwards of eighty pharmacy owners and responding police officers, who would have testified as to the occurrence of the burglaries and the amount of loss from each. The stipulation did not contain information about any of the alleged perpetrators, including Lenegan. After Lenegan signed the stipulation, it came to light that his attorney had a conflict of interest because he had represented one of the victim pharmacies in connection with an insurance claim arising out of the burglary. Lenegan refused to waive the conflict, and new counsel was appointed. Five days before trial, Lenegan moved to withdraw from the stipulation, arguing that he had not understood it and that his consent to it was tainted because he had conflicted counsel at the time. The District Court excised the portion of the stipulation relating to the pharmacy that had precipitated the conflict, but rejected Lenegan's motion in all other respects. Lenegan renews his arguments on appeal.

"We review a district court's decision to bind a party to its stipulation under an abuse of discretion standard." *Waldorf v. Shuta,* 142 F.3d 601, 616 (3d Cir.1998) (citing *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1098 (10th Cir.1991)).

We have noted that "[a]llowing parties easily to set aside or modify stipulations would defeat th[eir] purpose, wasting judicial resources and undermining future confidence in such agreements," and "[t]hus '[i]t is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside.'" *Id.* (quoting *Kohn v. Am. Metal Climax, Inc.,* 458 F.2d 255, 307 (3d Cir.1972)). When deciding whether it would be manifestly unjust to bind a party to a stipulation, we consider factors such as: "(1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether evidence contrary to the stipulation is substantial." *Id.* at 617–18 (citations omitted).

■ Before the District Court ruled on Lenegan's motion, both Lenegan and his counsel testified about their discussions concerning the stipulation. Because the Court found counsel's testimony more credible than Lenegan's testimony, the Court determined that Lenegan knowingly, intelligently, and voluntarily agreed to enter the stipulation. The Court then examined each of the four factors discussed in *Waldorf,* and concluded that they weighed in favor of enforcing the stipulation. Most notably, the Court found that Lenegan was not prejudiced in any way not already contemplated when he entered the waiver, whereas the Government would have been prejudiced by a last-minute decision forcing it to present witnesses to substantiate all of the stipulated facts. In light of the District Court's thorough consideration of the competing interests at issue, we hold that the Court acted well within its discretion.

C

Before trial, the Government filed a motion under Federal Rule of Evidence

404(b) to introduce evidence of seven uncharged commercial burglaries and two uncharged residential burglaries that Lenegan allegedly committed with various co-conspirators. Lenegan objected, arguing that the testimony was inadmissible because it was not direct or intrinsic evidence supporting the conspiracy count and, as to the other counts, it constituted propensity evidence. Lenegan also argued that the evidence would be inadmissible under Federal Rule of Evidence 403. The District Court agreed with Lenegan as to the risk of unfair prejudice that may result from testimony about residential burglaries; however, the Court also found that the testimony about commercial burglaries was admissible under Rule 404(b)—*i.e.*, to show intent, knowledge, preparation or plan, identity, or lack of mistake.[2] Moreover, the Court found that under the Rule 403 balancing test, the risk of unfair prejudice did not outweigh the probative value of the commercial burglary testimony. Several times throughout the testimony, the Court read to the jury a limiting instruction that explained the limited purposes for which the evidence was introduced and could be considered.

We will reverse the District Court's evidentiary rulings only if it abused its discretion, *i.e.*, if its decision is "arbitrary, fanciful, or clearly unreasonable . . . where no reasonable person would adopt [its] view." *United States v. Green*, 617 F.3d 233, 239 (3d Cir.2010) (citations omitted) (internal quotation marks omitted). We review de novo the District Court's legal interpretation of the Rules of Evidence, including whether certain testimony is admissible under Rule 404(b). *Id.*

According to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,]" but "[i]t may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We have elaborated on the Rule's requirements:

> To satisfy Rule 404(b), evidence of other acts must (1) have a proper evidentiary purpose, (2) be relevant under Rule 402, (3) satisfy Rule 403 (*i.e.*, not be substantially more prejudicial than probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105, that instructs the jury not to use the evidence for an improper purpose. *See United States v. Butch*, 256 F.3d 171, 175 (3d Cir.2001); *United States v. Mastrangelo*, 172 F.3d 288, 294–95 (3d Cir.1999). "Other acts" evidence satisfies the first two requirements if it is "probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In other words, there must be an articulable chain of inferences, " 'no link of which may be the inference that the defendant has the propensity to commit the crime charged,' " connecting the evidence to a material fact. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir.2000) (quoting *United States v. Morley*, 199 F.3d 129, 133 (3d Cir.1999));

**2.** The District Court also found it was direct and extrinsic evidence of the alleged conspiracy; however, the Government now concedes that after our decision in *United States v. Green*—which limited what evidence qualifies as "intrinsic" to that which (1) "directly proves the charged offense" or (2) relates to "uncharged acts performed contemporane-

ously with the charged crime . . . if they facilitate[d] the commission of the charged crime," 617 F.3d 233, 248–49 (3d Cir.2010) (citations omitted) (internal quotation marks omitted)—the testimony in this case would only be admissible under Rule 404(b), not as direct or intrinsic evidence of the charged conspiracy. Appellee's Br. at 59 n. 21.

*see also United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir.1988) (stating that the "chain of logic must include no link involving an inference that a bad person is disposed to do bad acts").

*United States v. Cross*, 308 F.3d 308, 320–21 (3d Cir.2002) (footnotes omitted). Rule 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The Advisory Committee Note defines "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *See also United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir.1992) ("Any evidence suggesting guilt is 'prejudicial' to a defendant and obviously Rule 403 is not intended to exclude all such matter. Rather, the focus must be on unfairness in the sense that the proponent would secure an advantage that results from the likelihood the evidence would persuade by illegitimate means." (citations omitted)).

■ The District Court made sound legal and factual findings at each step of the *Cross* analysis. It determined that the testimony of alleged co-conspirators about Lenegan's other commercial burglaries committed in furtherance of the conspiracy provided strong evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, and it was therefore relevant because it was probative of issues other than character. The Court also discussed the probative value of the evidence versus the risk of unfair prejudice, finding that testimony relating to uncharged commercial burglaries would not inflame jurors' passions as would evidence of residential burglaries, which the Court, in its sound discretion, deemed inadmissible. Finally, the Court drafted a four-page limiting instruction to guide the jury in its consideration of the evidence. That the jury acquitted Lenegan on the charges relating to one of the two alleged burglaries strongly suggests that the jury heeded that instruction. The District Court therefore did not abuse its discretion by admitting evidence of uncharged commercial burglaries.

### D

At sentencing, the Government moved for a three- or four-point upward departure under § 4A1.3 of the United States Sentencing Guidelines (USSG or Guidelines) based on the inadequacy of Lenegan's criminal history category. The parties agreed that Lenegan's thirty-six criminal history points placed him twenty-three points above the minimum needed to qualify for Category VI under the Guidelines. According to the Government, Lenegan had accumulated thirteen criminal history points by 1992, and although most of his crimes were non-violent property crimes, his persistent recidivism warranted an increase in his sentence. Lenegan argued that his crimes were almost entirely non-violent property offenses and that, even if sentenced within the Guidelines, he would be over sixty years old by the time of his release and would thus not be a threat to offend again. The District Court rejected Lenegan's arguments and departed upwards from his Guideline range of 168 to 210 months. Accounting for a two-point departure, Lenegan's range became 210 to 262 months, and the Court imposed a 220 month sentence.

We review de novo the District Court's "interpretation and application of the Sentencing Guidelines," whereas "[f]indings of facts are measured by the clearly erroneous test." *United States v. Yeaman*, 194 F.3d 442, 456 (3d Cir.1999) (citing *United States v. Hallman*, 23 F.3d 821, 823 (3d

Cir.1994) and *United States v. Hillstrom,* 988 F.2d 448, 450 (3d Cir.1993)).

Section 4A1.3(a)(1) of the Guidelines permits the sentencing court to depart upwards "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." "In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." *Id.* cmt. n. 2(B). We have also noted, but not adopted, the Second Circuit's approach to § 4A1.3 departures, which is that: "[O]nly the most compelling circumstances-for example, prior misconduct accompanied by wanton cruelty would justify a 4A departure above Category VI." *United States v. Hickman,* 991 F.2d 1110, 1114 (3d Cir.1993) (quoting *United States v. Coe,* 891 F.2d 405, 413 (2d Cir. 1989)) (internal quotation marks omitted).

▆ In explaining its decision to depart upwards in this case, the District Court considered the nature of Lenegan's prior offenses, noting that most, but not all, were property crimes. Even accounting for the non-violent nature of the offenses, the Court still concluded that Lenegan's criminal history category underrepresented the seriousness of his criminal background because his record contained a "staggering number[ ] of ... prior convictions"—*i.e.,* "32 sentences on a total of 81 criminal charges."

We see no reason to disturb the District Court's discretionary decision. Nothing in the Guidelines forbids a sentencing court from considering the number of prior crimes under § 4A1.3, and although "the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record," the number is still worthy of consideration. In Lenegan's case, the number of previous crimes, not to mention the number of parole and probation revocations, supports the District Court's judgment.

### E

Finally, Lenegan moved for a downward adjustment pursuant to USSG § 3B1.2, claiming he played a minimal or minor role in the conspiracy. He argued to the District Court that he was convicted of only one burglary out of more than forty committed or attempted. He also claimed the drug quantities stolen during his robberies were much lower than the total quantities stolen by several other participants. The District Court rejected this argument, finding that, although Lenegan was not a major participant, he was also more culpable than others and that, because his Guidelines range was based solely on the drug quantities from his own robberies, it properly accounted for his role.

We apply to the Court's denial of Lenegan's motion for downward departure the same standard of review we applied to its decision to grant the Government's motion for an upward departure. *Yeaman,* 194 F.3d at 456.

Pursuant to USSG § 3B1.2, a defendant's offense level is decreased by two, three, or four levels if the defendant played a minor role, minimal role, or something in between. The four-point "minimal participant" reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group," and "[i]t is intended that [it] will be used infrequently." § 3B1.2 cmt. n. 4. The two-point "minor participant" reduction, on the other hand, applies

to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* cmt. n. 5. "The determination whether to apply [§ 3B1.2] involves a determination that is heavily dependent upon the facts of the particular case." *Id.* cmt. n. 3(C). "The district courts are allowed broad discretion in applying this section and their rulings are left largely undisturbed by the courts of appeal." *United States v. Isaza–Zapata,* 148 F.3d 236, 238 (3d Cir.1998) (citation omitted).

■ Our review of the record leads us to conclude that the District Court provided an adequate rationale for its decision to deny Lenegan a mitigating-role reduction. Considering the jury's verdict as to one of the burglaries, as well as trial testimony about Lenegan's role in seven others, the Court found that he was "in no respect substantially less culpable than the average participant" and was in fact "equally culpable with at least five of the other participants." Because these findings are not clearly erroneous, we hold that the District Court did not err in rejecting Lenegan's motion pursuant to § 3B1.2.

### III

For the foregoing reasons, we will affirm the judgment of the District Court in all respects.