# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 16, 2018       Decided March 30, 2018

No. 17–3015

UNITED STATES OF AMERICA,
APPELLEE

v.

GARY COOPER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cr-00147-3)

*Jonathan Zucker*, appointed by the court, argued the cause and filed the briefs for the appellant.

*Rachel E. Timm*, Trial Attorney, United States Department of Justice, argued the cause for the appellee. *Vincent J. Falvo, Jr.*, Trial Attorney, was with her on brief.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Gary Cooper (not that one) was convicted of five counts for his role

in a scheme to steal from a labor union. Counts One and Two both charged conspiracy under 18 U.S.C. § 371. Count One alleged a conspiracy to embezzle money from the union. Count Two alleged a conspiracy to pay off the union official who embezzled the money. At sentencing, the district court enhanced Cooper's offense level for Count Two—the count that dictated his overall offense level—under section 2E5.1(b)(1) of the United States Sentencing Guidelines (U.S.S.G. or Guidelines).[1] Section 2E5.1(b)(1) applies "[i]f the defendant was a fiduciary of" the victim union. The court sentenced Cooper to 68 months in prison on Count Two. It also sentenced him to 68 months on each of the other counts, with all terms to run concurrently.

Cooper appeals, advancing three claims. First, he argues that the two alleged conspiracies were in fact one. As a result, he contends, his conviction on either Count One or Count Two must be vacated as multiplicitous. Second, he urges us to vacate all of his sentences because, in his view, they rest on an erroneous application of section 2E5.1(b)(1). Third, Cooper points out that a prison term for conspiracy cannot exceed section 371's five-year maximum—a restriction he says the district court violated in imposing a 68-month sentence on each conspiracy count. Finding merit in Cooper's claims, we vacate his sentences and remand for resentencing. On remand, the district court's first step will be to decide, in its discretion, which one of the multiplicitous convictions should be vacated. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985).

---

[1] We refer to the November 2016 version of the Guidelines Manual because that version applied to Cooper's February 2017 sentencing. *See* U.S.S.G. § 1B1.11(a) (court is to use version "in effect on the date that the defendant is sentenced").

## I. BACKGROUND

Cooper's convictions and sentences followed one year of pretrial litigation, an eight-day jury trial and a thorough sentencing process. We recite only the background necessary to resolve Cooper's claims of multiplicity and sentencing errors.

### A. INDICTMENT

"Charg[ing] the same offense in more than one count"—"a problem known as multiplicity"—is "a defect[] in the indictment." *United States v. Weathers*, 186 F.3d 948, 951, 953 (D.C. Cir. 1999) (internal quotations omitted); *see United States v. Harris*, 959 F.2d 246, 250-51 (D.C. Cir. 1992) (per curiam), *abrogated on other grounds as recognized by United States v. Stewart*, 246 F.3d 728, 730-32 (D.C. Cir. 2001); *see also* FED. R. CRIM. P. 12(b)(3)(B)(ii). We therefore begin with the indictment against Cooper and his codefendants. It alleged as follows.

*Generally*. Laborers International Union of North America, Local 657 (Union) is a labor union in Washington, D.C. It represents construction workers. Under the Union's constitution and bylaws, each Union officer is a fiduciary who can spend the Union's money only for the Union's benefit.

Anthony Frederick was a Union officer and thus a fiduciary. Christopher Kwegan and Gary Cooper owned STS General Contracting, Inc. (STS), a Maryland construction company. Kwegan and Cooper were signatories to STS's bank account, which they opened in May 2013.

*Count One*. According to Count One, Frederick, Kwegan and Cooper—"together and with others known and unknown to the grand jury"—violated 18 U.S.C. § 371 by agreeing to

commit an offense under 29 U.S.C. § 501.[2] Joint Appendix (JA) 28. From about April 2013 through about June 2014, the defendants conspired to embezzle Union money, secretly causing the Union to pay STS some $1.7 million "for uses other than for the benefit of [the Union] and its members." JA 28-29. Specifically, the defendants caused the Union to pay STS about $1.1 million for less than $100,000 of renovations to the Union's hall. And they caused the Union to pay STS nearly $600,000 in "exorbitant fee[s]" "to expedite building permits" for the Union's training center. JA 29. Frederick made the payments in installments. Kwegan and Cooper deposited the proceeds into STS's bank account.

*Count Two*. According to Count Two, Frederick, Kwegan and Cooper—"and other persons both known and unknown to the [g]rand [j]ury"—violated 18 U.S.C. § 371 by agreeing to commit an offense under 29 U.S.C. § 186.[3] JA 34. From about April 2013 through about June 2014, the defendants conspired to make unlawful payments in cash and in kind to Frederick. The payments included a $225,000 down payment on a house for Frederick and his wife; construction of a three-car garage at the house; and $8,000 via cashier's check.

---

[2] Section 501 prescribes criminal punishment for (*inter alia*) "[a]ny person who embezzles . . . any of the moneys . . . of a labor organization of which he is an officer." 29 U.S.C. § 501(c).

[3] Section 186 prescribes criminal punishment for (*inter alia*) "any person . . . who acts in the interest of an employer" and "pay[s] . . . any money or other thing of value . . . to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer." 29 U.S.C. § 186(a)(2).

The money came from the same STS bank account into which Kwegan and Cooper had deposited the embezzled Union funds.

*Other counts*.   Cooper was also charged in Counts Three, Fourteen and Twenty-One.   Count Three charged Frederick, Kwegan and Cooper with defrauding the Union "by means of wire communications"—in the process depriving the Union of property and Frederick's honest services—in violation of 18 U.S.C. §§ 2, 1343 and 1346.   JA 43.   The gravamen of the fraud scheme, according to Count Three, was that Kwegan and Cooper secretly paid Frederick "bribes and kickbacks . . . in return for favorable action" on their overpriced renovations and bogus fees, thereby "caus[ing] the expenditure of more than $1.70 million" of Union money.   JA 40.   Counts Fourteen and Twenty-One charged Cooper with laundering the proceeds of the scheme in violation of 18 U.S.C. § 1957.

## B.  MOTION TO DISMISS AND TRIAL

Cooper pleaded not guilty.   Before trial, he moved to dismiss Counts One and Two as multiplicitous.   Alternatively, he argued that the government should be required to elect only one conspiracy count on which to proceed.   The district court "defer[red] ruling . . . until after [the] verdict."   JA 74; *see* JA 70-71 ("[I]t's perfectly acceptable to deal with that issue after trial, if there are convictions, and that's what I'll do.").

Frederick and Kwegan pleaded guilty.   Kwegan testified at Cooper's trial.   He explained some of the mechanics of the scheme and the ways in which he, Frederick and Cooper tried to conceal it.   He admitted that STS funded the down payment on Frederick's house using embezzled Union money.   Indeed, Kwegan characterized the down payment as a "kickback" to Frederick.   Supplemental Appendix (SA) 118.   He also noted that Frederick bought the house from Dennis Laskin, an acquaintance of Kwegan.   According to Kwegan, Laskin

actively helped the defendants hide the fact that they used embezzled Union money to finance Frederick's purchase.

The jury found Cooper guilty on all five counts. After trial, Cooper did not remind the district court of his pending motion to dismiss the conspiracy counts as multiplicitous nor did the court rule on the motion.

## C. SENTENCING

At sentencing in Frederick's and Kwegan's cases, the district court issued a "Notice" "conclud[ing] that the guideline applicable to Count II—§ 2E5.1—produce[d] the highest offense level" for any count of conviction and thus "govern[ed]" the overall offense level for both Frederick and Kwegan. JA 116-17. Adopting that analysis, the probation office in Cooper's case prepared a presentence report (PSR) that used "the guideline applicable to Count Two," section 2E5.1, to calculate Cooper's governing offense level. PSR ¶ 46. The PSR calculated a base offense level of 10 and assessed 17 levels of enhancements not here in dispute. The PSR also recommended a two-level enhancement under "USSG §§ 2E5.1(b)(1) and 2X2.1" because Cooper "is considered an aider and abettor to Mr. Frederick, who was a fiduciary of the labor organization." PSR ¶ 50. Based on Cooper's criminal record, the PSR calculated a criminal history category of II. Taking that calculation together with Cooper's offense level of 29, the PSR computed an advisory Guidelines range of 97 to 121 months in prison.

In his sentencing memorandum and at the sentencing hearing, Cooper did not dispute that Count Two, and therefore section 2E5.1, yielded the highest offense level for any count of conviction and controlled his overall Guidelines range. But he objected to the two-level enhancement under section 2E5.1(b)(1), which applies if "the defendant" was a fiduciary

of the victim union. Cooper pointed out that he, the defendant, was not a Union fiduciary. The government responded that Cooper aided and abetted Frederick, "the principal," who "very clearly [had] a fiduciary duty" to the Union. JA 126. The government argued that the enhancement applied because, under the aiding and abetting statute, Cooper was punishable as a principal. *Id.* (citing 18 U.S.C. § 2).

The district court overruled Cooper's objection. Relying on its earlier Notice, the court concluded that section 2E5.1 governed Cooper's overall offense level. JA 120. Agreeing with the PSR, the court then invoked the aiding and abetting guideline, section 2X2.1:

> [B]ecause Mr. Frederick was a fiduciary of the union, the two-point increase plainly applied to him. The two-point increase also applies to Mr. Cooper . . . under 2X2.1, which provides that for an aider and abetter, quote, the offense level is the same as that for the underlying offense, end quote. By convicting Mr. Cooper of Count 3, the jury determined that Mr. Cooper aided and abetted Mr. Frederick's illegal acts.

JA 126-27. Endorsing the PSR's other recommendations as well, the court agreed that Cooper's advisory Guidelines range was 97 to 121 months. The court varied downward from the range and imposed a sentence of 68 months in prison on each count of conviction, with all terms to be served concurrently. Cooper did not object that the 68-month sentence for each conspiracy conviction exceeded the five-year maximum under 18 U.S.C. § 371.

## II.  ANALYSIS

Cooper claims multiplicity in the conspiracy counts; procedural error in the district court's sentencing him as a fiduciary; and legal error in the court's imposing an above-maximum sentence on each conspiracy count.

### A.  MULTIPLICITY

Before we evaluate Cooper's multiplicity claim, we must decide the standard of review.   A preserved multiplicity claim presents a question of law to be reviewed de novo.  *See, e.g.*, *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000); *see also* 1A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 142, at 29 n.32 (4th ed. 2008 & Supp. 2017) (citing additional cases).   Cooper says he preserved his multiplicity claim by virtue of his pretrial motion. The government says he forfeited his claim because he "failed to renew [it] following the verdict."   Appellee's Br. 12.   We agree with Cooper.

To repeat, Cooper claims a defect in the indictment.  *See, e.g.*, Appellant's Br. 20 ("[T]he indictment is multiplicitous, and thereby defective, because a single offense is alleged in counts one and two.").   Rule 12 of the Federal Rules of Criminal Procedure governs such a claim.   It provides in pertinent part:

> **(3) Motions That Must Be Made Before Trial.**  The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits: . . .

> **(B)** a defect in the indictment or information, including: . . .
>
>> **(ii)** charging the same offense in more than one count (multiplicity) . . . .

FED. R. CRIM. P. 12(b).

Cooper's pretrial motion preserved his multiplicity claim. Granted, Cooper did not post-trial call the district court's attention to the fact that it had not yet ruled on the motion. As Cooper's counsel acknowledges, such a reminder would have been "the better practice" "in an optimal world." Oral Arg. Recording 8:25-8:39. Still, the pretrial motion met the terms of Rule 12(b)(3) and served the latter's purpose, which "is to compel defendants to object to technical defects in the indictment early enough to allow the district court to focus on their pretrial objections." *Harris*, 959 F.2d at 250. It is not as though Cooper sandbagged the court by failing to object. *See Puckett v. United States*, 556 U.S. 129, 134 (2009) (purpose of "contemporaneous-objection rule" is "to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them").

The government cites no authority holding that a defendant who fails to remind the district court of a pending pretrial motion forfeits a multiplicity claim raised in the motion. The government points to *United States v. Galati*, 230 F.3d 254 (7th Cir. 2000), but that case is distinguishable. There, the district court "denied . . . without prejudice" Galati's motion to suppress "and told Galati to raise it again during the course of the trial." *Id*. at 259. The court of appeals concluded that Galati forfeited his claim by failing to comply with the district court's instruction. *Id*. (reasoning that preservation rules are "subject to variation by the trial judge" who, in Galati's case, "required Galati to renew his objection"

(internal quotation omitted)). Here, by contrast, the district court did not deny Cooper's motion or direct him to raise his multiplicity claim later. Instead, without suggesting that a reminder was required, the court expressed its intention to rule on Cooper's motion if he were convicted. JA 70-71 ("[I]t's perfectly acceptable to deal with that issue after trial, if there are convictions, *and that's what I'll do*." (emphasis added)). Under these circumstances, we do not think the absence of a reminder constituted forfeiture.

We therefore consider de novo whether Counts One and Two are multiplicitous. Multiplicity violates the Fifth Amendment's Double Jeopardy Clause, which "protects not only against a second prosecution for the same offense after acquittal or conviction" but also against "charg[ing] the same offense in more than one count" of a single indictment. *Weathers*, 186 F.3d at 951 (internal quotation omitted); *see* U.S. CONST. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."). Ordinarily, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test . . . to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). But what of a case in which multiple counts charge a violation of the *same* statutory provision? What if, as here, two counts of the same indictment charge a violation of the general conspiracy statute, 18 U.S.C. § 371? The question is, then, whether the counts charge "the same act or transaction"— i.e., the same conspiracy—at all. *Blockburger*, 284 U.S. at 304; *see Braverman v. United States*, 317 U.S. 49, 52-54 (1942) (conspiracy counts are multiplicitous if they charge same agreement under same conspiracy statute); *Ward v. United States*, 694 F.2d 654, 661 (11th Cir. 1983) (same, citing additional cases).

In dicta, we have endorsed the Second Circuit's multifactor standard for "determining whether two conspiracies amount to the same offense for double jeopardy purposes": we may "consider[] factors such as common purpose, overlap of participants and time, location where acts occurred, and interdependence." *United States v. Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) (citing *United States v. Macchia*, 35 F.3d 662, 667-68 (2d Cir. 1994)). Other courts consider the same or similar factors.[4] We see no reason to blaze a different trail. And we are mindful that there is "no dominant factor or single touchstone." *Id.* (quoting *Macchia*, 35 F.3d at 668); *see United States v. Abboud*, 273 F.3d 763, 767 (8th Cir. 2001) (totality of circumstances dictates result).

Here, all of the factors point in the same direction: Counts One and Two charged the same conspiracy.

*Common purpose*. The crux of Count One is that Frederick, Kwegan and Cooper, leveraging Frederick's position with the Union, secretly caused the Union to pay STS some $1.7 million for the defendants' benefit rather than the Union's. The crux of Count Two is that Kwegan and Cooper used some of the money to make unlawful payments to Frederick. The indictment elsewhere characterizes the payments as "kickbacks" for Frederick's embezzling efforts.

---

[4] *See, e.g.*, *United States v. Travillion*, 759 F.3d 281, 295 (3d Cir. 2014); *United States v. El-Mezain*, 664 F.3d 467, 546 (5th Cir. 2011); *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir. 1986); *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir. 1985); *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983); *United States v. Castro*, 629 F.2d 456, 461 (7th Cir. 1980).

JA 40. Kwegan used the same term at trial.[5] SA 118. That characterization—supported by evidence that Kwegan and Cooper paid Frederick from the same account into which they deposited the ill-gotten money—aptly describes a single scheme with a common purpose: to unjustly enrich all three defendants at the Union's expense. BLACK'S LAW DICTIONARY 1001 (10th ed. 2014) ("kickback" is "sum of money illegally paid to someone in authority, esp. for arranging for a company to receive a lucrative contract; esp., a *return* of a portion of a monetary sum received, usu. as a result of coercion or a secret agreement" (emphasis added)).

*Interdependence*. One hand washed the other. Kwegan and Cooper benefited from Frederick's approving Union outlays for STS's overpriced renovations and bogus fees (Count One). In return, Frederick benefited from STS's kickbacks (Count Two). The government does not contend that, contrary to human nature, the outlays would have continued absent the kickbacks or the kickbacks absent the outlays. Instead, as the prosecutor argued to the jury, Frederick authorized the outlays because he got a cut and he got a cut because he authorized the outlays:

- "And you'll ask yourself, as I did before, how is it that this union business manager wants to empty the treasury to these two guys? . . . Because they agreed to kick part of it back to [him]." JA 77.

- "[H]ow would Mr. Cooper know that the inside man in this scheme, Anthony Frederick, would betray the organization he had been a member of for decades and

---

[5] We can consider the trial evidence to the extent it helps us decide whether the indictment in fact alleged only one agreement. *Ward*, 694 F.2d at 661-62.

had led as its business manager for 10 years?   And we have shown you exactly why and how . . . . The house, the garage, the cash payments . . . ."   JA 112-13.

- "[T]his fraud . . . solidified when Cooper, Kwegan, and Frederick were standing on the driveway of that house that Frederick wanted and said I don't have the money for this, and [Cooper] said, you know what, we can finance this, and we'll finance it through the money we're going to get from the union and we'll kick that back to you."   JA 114.

- "[T]his fraud . . . was facilitated and it was greased when all that money went out the door that the union got no benefit for, for work that was never performed." *Id*.

We can describe the confluent thrust of Counts One and Two no better than the prosecutor did.

*Overlap of participants*.   Frederick, Kwegan and Cooper were the core players in both charged conspiracies. Illustrating the point, Counts One and Two identically alleged that the scheme's participants were "Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER," together with others known and unknown to the grand jury.   JA 28, 34.   Resisting the symmetry, the government touts Dennis Laskin's purportedly "pivotal" role in the unlawful payments to Frederick (Count Two). Appellee's Br. 16.   To us, Laskin was a tangential figure. The indictment nowhere mentions him by name.   In any event, his role was to help Kwegan and Cooper conceal not only that they helped pay for Frederick's house but that they used *embezzled Union money* to do so.   Thus, whatever Laskin's importance to concealing the kickbacks (Count Two), he was

equally important to concealing the plundering of the Union (Count One).

*Overlap in time*.  Counts One and Two both alleged a conspiracy running from April 2013 through June 2014.  The overall duration of each charged conspiracy could not be more congruent than that.  And the overlap is even more striking when we consider the particulars: the Union outlays to STS were chronologically intertwined with STS's kickbacks to Frederick.  *Compare, e.g.*, JA 32-33 (alleging Union outlays in July, August, September, November and December of 2013, along with further payments in January 2014), *with* JA 35-38 (alleging STS kickbacks to Frederick in July, August, October and December of 2013); *see also, e.g.*, SA 126-28 (Kwegan testified that, one day after Frederick disbursed about $150,000 from Union to STS, STS used same money to pay Laskin for Frederick's house).

*Location*.  The government admits that acts in furtherance of each charged conspiracy "occurred in the same region," that is, within the District of Columbia and Maryland.  Appellee's Br. 18-19.  It observes, however, that the region "is large enough to host simultaneous conspiracies" and that the acts related to the Union outlays did not always occur in the identical geographic locations as the acts related to the kickbacks.  *Id*.  The observation may be correct as far as it goes but it does not go far.  After all, the outlays and kickbacks came to and went from the *same STS bank account*.  Whether or not it can fairly be called geographic, that single location was central to the scheme and was common to both halves of it.

Weighing all of the factors together, we conclude that Counts One and Two were multiplicitous.  On remand, Cooper's conviction on one of those counts will have to be

vacated. We leave it to the district court to decide which one. *See Ball*, 470 U.S. at 864-65 (remanding so that court with "sentencing responsibility" could "exercise its discretion to vacate one of the [multiplicitous] convictions").

## B. FIDUCIARY ENHANCEMENT

Cooper claims the district court erroneously enhanced his Guidelines offense level by two levels under U.S.S.G. § 2E5.1(b)(1). Because the claim is "purely legal"—calling for us to decide the soundness of the court's Guidelines interpretation—our review is de novo. *United States v. McKeever*, 824 F.3d 1113, 1119 (D.C. Cir. 2016) (internal quotation omitted). We agree with Cooper that the court erred in applying section 2E5.1(b)(1). Explaining why requires us to pinball through the Guidelines Manual as a whole.

At the outset, section 1B1.1 prescribes a crucial sequence of operations. U.S.S.G. § 1B1.1(a) ("The court shall determine . . . the guideline range . . . by applying the provisions of this manual *in the following order* . . . ." (emphasis added)). We quote the first four steps.

- Step one is to "[d]etermine, pursuant to §1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction." U.S.S.G. § 1B1.1(a)(1).

- Step two is to "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed." U.S.S.G. § 1B1.1(a)(2).

- Step three is to "[a]pply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three." U.S.S.G. § 1B1.1(a)(3).

- Step four—which is necessary "[i]f there are multiple counts of conviction"—is to "repeat steps (1) through (3) for each count." U.S.S.G. § 1B1.1(a)(4). The court is then to "[a]pply Part D of Chapter Three to group the various counts and adjust the offense level accordingly." *Id.*

Step four is necessary here because Cooper was convicted of multiple counts. Step four manifests that the district court was to perform steps one through three for each of Cooper's convictions *separately*. Only after correctly calculating the offense level for each conviction was the court "to group the various counts and adjust the offense level accordingly." U.S.S.G. § 1B1.1(a)(4); *see United States v. Sinclair*, 770 F.3d 1148, 1157 (7th Cir. 2014) ("Grouping rules are applied after the offense level has been calculated for each separate offense in the case."). In other words, at steps one through three, the court was not to intermingle the counts and their respective guidelines. But the court did just that.

To spare the reader unnecessary tedium, we do not here perform steps one through three for each conviction. Looking ahead at the applicable grouping rules, U.S.S.G. § 3D1.2(d); *see* PSR ¶ 46, we think it suffices to say that the district court was to use "the offense guideline that produces the highest offense level" to determine Cooper's overall offense level and advisory imprisonment range, U.S.S.G. § 3D1.3(b). Cooper does not challenge the court's conclusion—embodied in the Notice it issued in Frederick's and Kwegan's cases, JA 117—that the offense guideline applicable to Count Two produced

the highest offense level.[6]  Performing the first two steps for that count demonstrates the court's error.

Starting with step one, we ask which offense guideline applied to the Count Two conspiracy conviction.  Section 1B1.2 provides that "[i]f the offense involved a conspiracy, attempt, or solicitation," the district court is to "refer to §2X1.1 (Attempt, Solicitation, or Conspiracy) as well as the guideline referenced in the Statutory Index for the substantive offense." U.S.S.G. § 1B1.2(a).  Section 2X1.1, in turn, directs the court to use "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  U.S.S.G. § 2X1.1(a).  The Statutory Index lists section 2E5.1 as the guideline for the underlying substantive offense of making unlawful payments to a union officer in violation of 29 U.S.C. § 186.  U.S.S.G. App. A. Section 2E5.1 is indeed the guideline the district court used to calculate Cooper's offense level for Count Two.  JA 117, 120. So far so good.

Turning to step two, we ask what Cooper's offense level was for Count Two.  As the district court found, Cooper's base offense level was 10 under section 2E5.1(a)(1).  The court added 17 levels of enhancements that Cooper does not dispute. The court added two more levels under section 2E5.1(b)(1), which applies "[i]f the defendant was a fiduciary of the benefit plan or labor organization."  Cooper objected to the fiduciary enhancement because he, the defendant, was not a Union fiduciary.  In the district court's view, that fact was no obstacle

---

[6]  We leave it to the district court to determine which count will produce the highest offense level after the court vacates one of the conspiracy convictions and no longer treats Cooper as a fiduciary under U.S.S.G. § 2E5.1(b)(1).

to the enhancement because Frederick was a Union fiduciary and, under section 2X2.1 ("Aiding and Abetting"), the offense level for an aider and abettor "is the same as that for the underlying offense." JA 126.

The district court took a wrong turn in using the aiding and abetting guideline, section 2X2.1, to calculate the offense level for Count Two.[7] Again, the Count Two conspiracy conviction was governed by the conspiracy guideline, section 2X1.1. Nothing in section 2X1.1—or in section 2E5.1, which applied to the underlying substantive offense—suggests the *aiding and abetting* guideline bears on the offense level for *conspiring* to make unlawful payments to a union official.

---

[7] The government says Cooper forfeited, in district court and in his opening brief on appeal, any objection to the district court's reliance on aiding and abetting principles. We disagree. In his sentencing memorandum and at the hearing, Cooper claimed he should not be treated as a Union fiduciary merely because Frederick was a fiduciary. *See, e.g.*, Def.'s Sentencing Mem., Dkt. No. 152 at 2 ("[H]is offense level should be based on *his* status in relation to the labor organization[,] not the fiduciary status of the principal offender, co-defendant Frederick."). In our view, that objection fairly encompassed the narrower point that Cooper should not be treated as a fiduciary for the Count Two conspiracy merely because he aided and abetted Frederick's commission of a wholly separate offense. Further, Cooper's opening brief in this Court at least twice takes issue with the district court's application of the aiding and abetting guideline. Appellant's Br. 8 ("The sentencing court increased Cooper's offense level by erroneously determining that the fiduciary enhancement under § 2E5.1(b)(1) applied on the basis of § 2X2.1 . . . ."); *id.* at 10 ("The fiduciary enhancement is determined on the basis of the relevant conduct guideline[,] not the aiding and abetting guideline[.]" (capitalization altered)).

19

Granted, the fraud conviction on Count Three might have rested on a theory of aiding and abetting. *See* JA 126-27 (district court found that, "[b]y convicting Mr. Cooper of Count 3, the jury determined that Mr. Cooper aided and abetted Mr. Frederick's illegal acts"). To that extent, however, the aiding and abetting guideline bore on the offense level for *Count Three*, not the offense level for *Count Two*, which was to be calculated separately.[8]

---

[8] The government suggests we can uphold the fiduciary enhancement as an enhancement to Cooper's offense level for *Count Three*. Oral Arg. Recording 24:30-25:45. Recognizing that the fraud guideline, section 2B1.1, otherwise applies to Cooper's Count Three wire fraud conviction, *see* U.S.S.G. App. A, the government invokes section 2B1.1(c)(3). Section 2B1.1(c)(3) provides in relevant part that if the defendant was convicted under 18 U.S.C. § 1343 (as Cooper was) and "the conduct set forth in the [fraud] count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct)," the court is to "apply that other guideline." But the district court did not mention section 2B1.1(c)(3), let alone use it to cross-reference sections 2X2.1 and 2E5.1 in calculating Cooper's offense level for Count Three. Instead, the court relied on its earlier Notice "conclud[ing] that the guideline applicable to *Count II*—§ 2E5.1—produce[d] the highest offense level" for any count of conviction and thus "govern[ed]" the overall offense level. JA 117 (emphasis added); *see* JA 120.

In any event, the applicable commentary states that a cross-reference is appropriate only if the fraud count involves "conduct that is more aptly covered by another guideline." U.S.S.G. § 2B1.1 cmt. n.16. Here, section 2E5.1 does not "more aptly cover[]" the fraud scheme than section 2B1.1 does. The conduct at the heart of Count Three was bribing Frederick *and* depriving the Union of $1.7 million, most of which was not kicked back to Frederick. Section 2E5.1 is directed primarily at the unlawful payments to Frederick. U.S.S.G. § 2E5.1(a); *cf*. 29 U.S.C. § 186(a)(2) (prohibiting certain payments to union officer without reference to whether union was defrauded).

In short, aiding and abetting principles had nothing to do with whether Cooper, as Frederick's coconspirator, should be sentenced on Count Two as a Union fiduciary.[9] The question remains whether conspiracy or relevant conduct principles nevertheless dictate application of the fiduciary enhancement. We think not. Under the relevant conduct guideline, a conspirator's offense level "shall be determined on the basis of . . . all acts and omissions" of his coconspirators if their acts and omissions were within the scope of the conspiracy, were in furtherance of it and were reasonably foreseeable. U.S.S.G. § 1B1.3(a)(1)(B). As a matter of plain English, Frederick's fiduciary status was not an "act[]" or "omission[]," *id.*, much less an act or omission attributable to "the defendant," Cooper, who did not personally share any such status, *id.* § 2E5.1(b)(1).

In reaching this conclusion, we draw support from *United States v. Moore*, 29 F.3d 175 (4th Cir. 1994), which construed the analogous abuse-of-trust guideline, U.S.S.G. § 3B1.3. In *Moore*, the Fourth Circuit held that a conspirator's abuse of a position of trust cannot "be attributed to other members of a

Although section 2B1.1 accounts for the loss to the Union directly, section 2E5.1 does so only indirectly—by sending the court right back to the loss table of section 2B1.1 based on "the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater." U.S.S.G. § 2E5.1(b)(2)(B). Under these circumstances, section 2B1.1(c)(3) does not dictate a cross-reference to section 2E5.1. *Cf. United States v. Baldwin*, 774 F.3d 711, 733 (11th Cir. 2014) (rejecting contention that tax guidelines were "more apt[]" than section 2B1.1 where "heart of [fraud] scheme was not simply to file fraudulent tax returns" but also for defendant to "enrich himself" at expense of identity-theft victims and government).

[9] For that reason, we need not and do not express any opinion on the correct interpretation of section 2X2.1 or on whether the fiduciary enhancement would apply if section 2X2.1 did.

conspiracy" who do not "personally hold" such a position. 29 F.3d at 176. The court reasoned that the "*status* of having a relationship of trust with the victim" is not an act or omission attributable to the defendant under the relevant conduct guideline, especially because section 3B1.3 applies only if "'*the defendant* abused a position of public or private trust.'" *Id*. at 178 (quoting U.S.S.G. § 3B1.3); *see id*. ("[s]uch defendant-specific language" indicates requirement that "defendant being sentenced" abused position of trust). *Moore*'s reasoning is persuasive and applies with similar force to section 2E5.1(b)(1), which, like section 3B1.3, is written in defendant-specific language.

## C. STATUTORY MAXIMUM

The district court imposed concurrent prison terms of 68 months on each count of conviction. That was not a problem as to Counts Three, Fourteen and Twenty-One, each of which carried a statutory maximum well above 68 months. *See* PSR ¶ 120 (under 18 U.S.C. § 1343, Count Three carried maximum of twenty years); *id.* ¶ 121 (under 18 U.S.C. § 1957, Counts Fourteen and Twenty-One carried maximum of ten years each). But it was a problem as to Counts One and Two because the conspiracy statute prescribes a maximum term of five years. 18 U.S.C. § 371; *see* PSR ¶¶ 118-19.

Cooper did not contemporaneously object to the above-maximum sentences on Counts One and Two. As a result, our review is for plain error. FED. R. CRIM. P. 52(b); *see United States v. Hunt*, 843 F.3d 1022, 1029 (D.C. Cir. 2016). Because "[i]t is a miscarriage of justice to give a person an illegal sentence . . . just as it is to convict an innocent person," the above-maximum sentences amounted to plain error. *United States v. Coles*, 403 F.3d 764, 767 (D.C. Cir. 2005) (per curiam) (internal quotation omitted). The government

concedes as much. Appellee's Br. 27-28. But we are already vacating all of Cooper's sentences for procedural error in the calculation of his advisory Guidelines range. We therefore believe it is sufficient to remind the district court of section 371's five-year maximum.

For the foregoing reasons, we vacate Cooper's sentences and remand for resentencing consistent with this opinion.

*So ordered.*