IN THE SUPREME COURT OF THE STATE OF DELAWARE

COREY PATRICK,               §
                             §   No. 355, 2020
   Defendant Below,        §
   Appellant,              §   Court Below: Superior Court
                             §   of the State of Delaware
   v.                      §
                             §   Cr. ID No. K1908017570
STATE OF DELAWARE,           §
                             §
   Plaintiff Below,        §
   Appellee.               §

Submitted: July 14, 2021
Decided: September 23, 2021

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting this Court *en Banc*.

Upon appeal from the Superior Court of the State of Delaware: **AFFIRMED IN PART**, **REVERSED IN PART**, and **REMANDED**.

Nicole M. Walker, Esquire, Office of Public Defender, Wilmington, Delaware; *for Defendant Below, Appellant Corey Patrick.*

John Williams, Esquire, Delaware Department of Justice, Wilmington, Delaware; *for Plaintiff Below, Appellee State of Delaware.*

**SEITZ**, Chief Justice:

A Superior Court jury convicted Corey Patrick for multiple drug and weapons offenses. On appeal, Patrick challenges the trial court's decision to permit law enforcement witnesses to testify about the lengthy drug investigation leading to his arrest. Patrick also contests his two convictions for possession of a deadly weapon by a person prohibited. First, Patrick argues that there was insufficient evidence to sustain a conviction for the simultaneous possession of a firearm and a controlled substance because the State failed to satisfy the "possession" element. And second, Patrick claims that his conviction under Count Four of the Indictment for possession of a deadly weapon by a person prohibited (weapon and drugs together) should be vacated as duplicative of his other conviction under Count Two of the Indictment for possession of a deadly weapon by a person prohibited (weapon and prior felony conviction).

We affirm Patrick's convictions except for his conviction under Count Four of the October 7, 2019 Indictment (weapon and drugs together). The Count Four conviction duplicated his conviction under Count Two (weapon and prior felony conviction) and violated the constitutional prohibition against Double Jeopardy. Thus, we reverse and remand to the Superior Court to vacate his conviction and sentence under Count Four of the October 7, 2019 Indictment.

## I.

In August 2019, as part of a drug investigation, Delaware State Police detectives observed Corey Patrick and others leave the Christiana Mall in a GMC Terrain to pick up two of Patrick's children near White Oak Road in Dover. The family drove to the Walmart in Camden, Delaware. Police arrested Patrick on a warrant as he left the store. Detective Brian Holl patted Patrick down for weapons and found close to $1,000 in cash and two phones—an iPhone and a TLC track phone.

Police searched the GMC Terrain and found several bags of heroin bundled together with rubber bands in a compartment on the driver's side door. The bags were stamped "Angry Duck" in red ink. Police also found a book bag in the backseat with seven pink ten-milligram oxycodone pills, heroin packaging, and a little over $3,600 in cash.

After arresting Patrick, police executed a warrant to search his apartment. In a partial walk-in closet in the master bedroom police recovered a Glock 388 semi-automatic handgun from a men's shoe box on the top shelf of the closet. The shoe box also contained mail addressed to Patrick. Another shoe box in the closet contained white paper and green cellophane wrap, known to the detective to be heroin packaging materials. A safe on the floor of the closet contained over $5,300 in cash. Police searched the men's clothing hanging in the closet and found in the

jacket pocket thirty-three bags of heroin wrapped in blue wax paper bags and twelve unopened Suboxone strips. The police also recovered bags of heroin in a pair of male jeans lying on a bed and a single bag in a fanny pack near the front door of the apartment.

A Kent County grand jury indicted Patrick on twelve counts of various drug and weapons offenses, including one count of possession of a deadly weapon during the commission of a felony under 11 *Del. C.* § 1447a, two counts of possession of a deadly weapon by a person prohibited under 11 *Del. C.* § 1448(a)(1), and another count of the same charge under § 1448(a)(9). At trial, law enforcement witnesses testified about the nearly four-month drug investigation of Patrick by multiple officers from the Governor's Task Force and the Dover Drugs, Vice, and Organized Crime unit. The evidence included the fact that officers regularly watched Patrick enter and exit his apartment daily and monitored his location through use of a GPS device affixed to his vehicle.

Defense counsel objected to the admission of the surveillance evidence and argued that the evidence was unfairly prejudicial because it could lead the jury to infer that Patrick was involved in criminal conduct by virtue of being under investigation by the Task Force and Organized Crime unit. The Superior Court overruled the objections. At the close of the State's case, defense counsel moved for judgment of acquittal on the counts for possession of a deadly weapon during the

4

commission of a felony and for possession of a deadly weapon by a person prohibited. Patrick argued that the State had failed to show that the gun was physically available or accessible to Patrick while he committed the alleged felonies and that Patrick constructively possessed the gun.

The Superior Court granted the motion for possession of a deadly weapon during the commission of a felony charge but denied the motion for all three of the possession of a deadly weapon by a person prohibited charges.[1] The jury found Patrick guilty of the possession of the deadly weapon by a person prohibited charges and the remaining drug offenses. The Superior Court sentenced Patrick to 13 years of incarceration followed by decreasing levels of supervision.

## II.

Patrick raises three arguments on appeal. First, the Superior Court abused its discretion by allowing law enforcement officers to testify about the lengthy drug investigation leading to Patrick's arrest. Second, the Superior Court incorrectly denied Patrick's motion for judgment of acquittal on the possession of a deadly weapon by a person prohibited charge under 11 *Del. C.* § 1448(a)(9). And third, his conviction under Count Four of the Indictment (weapon and drugs together) duplicated his conviction under Count Two of the Indictment (weapon and prior

---

[1] App. to Opening Br. at A113-15.

felony conviction) and violates the Double Jeopardy clause of the United States Constitution.

## A.

Addressing Patrick's evidentiary objection first, we review the Superior Court's decision whether to admit evidence under an abuse of discretion standard.[2] Relevant evidence is generally admissible.[3] But relevant evidence may also be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[4] A police officer may testify about background facts to give the jury context and to ensure there are no holes in the State's case that might lead the jury to infer improper conduct by police.[5] If, however, the usefulness of that testimony to the jury is substantially outweighed by the unfair prejudice to the defendant, the trial court should limit the State's reliance on background evidence.[6] This is especially important when the background evidence depends upon extensive hearsay statements or reports.[7] In that case, the State should limit its use of inadmissible evidence and employ other means to achieve the same goal—to give the jury background information necessary to set the stage for the accused criminal conduct.

---

[2] *Hines v. State*, 248 A.3d 92, 99 (Del. 2021).
[3] D.R.E. 402.
[4] D.R.E. 403.
[5] *Williams v. State*, 98 A.3d 917, 920-21 (Del. 2014).
[6] *Sanabria v. State*, 974 A.2d 107, 112 (Del. 2009).
[7] *Johnson v. State*, 587 A.2d 444, 448 (Del.1991).

The investigating officers testified at trial that they worked on the Governor's Task Force and the Dover Drugs, Vice, and Organized Crime units; the investigation of Patrick lasted nearly four months; they watched Patrick exit and enter the apartment daily; and they monitored Patrick's activity through a GPS device affixed to Patrick's car. Patrick argues these background statements aroused prejudice that Patrick was likely to have committed the crime.

Patrick also argues that the background evidence is only probative because it shows where Patrick lived and how the officers were able to locate Patrick and arrest him. As Patrick claims, these facts could have been shown by other means. For example, the officers could testify they observed Patrick enter and exit the apartment without saying they did so as members of the Governor's Task Force during a four-month long investigation. According to Patrick, the Superior Court did not properly weigh the danger of the jury inferring Patrick was involved in criminal activity against the weak probative value of the evidence.

We disagree. First, the record shows that the court considered the danger of unfair prejudice versus the probative value of the evidence as required by D.R.E. 403. The trial judge observed colloquially that evidence implicating the defendant in criminal conduct is always prejudicial. But he also held that any unfair prejudice

could be addressed through cross-examination.[8]  Also, the court eventually restricted the State's background testimony.[9]

Second, the probative value of the evidence is not as weak as Patrick claims. For more than one charge the State had to prove that Patrick possessed the drugs and weapon found in the apartment and the car.[10]  The State showed the connection by presenting evidence that Patrick lived at the apartment and that he often drove the car.  Testimony about the GPS device showed how law enforcement connected Patrick to the apartment and the car.[11]  While there were other ways to demonstrate Patrick's connection to the apartment and the car, the court in this case did not abuse its discretion by allowing the officers to testify about their roles and the investigation leading up to his arrest.

### B.

Patrick also argues that Count Four of the Indictment charged him twice for possession of a single deadly weapon by a person prohibited in violation of the Double Jeopardy clause of the United States Constitution.  Because Patrick did not

---

[8] App. to Opening Br. at A28.

[9] *Id*. at A91.

[10] For example, each "person prohibited" offense required the State to prove possession of a deadly weapon, such as the firearm found in the closet.  11 *Del. C.* § 1448.

[11] *See Ellison v. State*, 812 A.2d 899, 2002 WL 31681699 at *1 (Del. Nov. 27, 2002) (TABLE) (holding that bad act evidence was admissible where the evidence was necessary to avoid a conceptual hole in the State's case that could confuse the jury); *Morris*, 999 N.E.2d at 166-67 (holding that evidence of a 911 call accusing defendant of robbing someone at gunpoint was relevant background information that helped explain the aggressive conduct of police when arresting the defendant).

raise this issue with the trial court, we review this claim for plain error.[12]  To qualify as plain error, the error "'must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process,' and our review 'is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.'"[13]  Despite this high bar, we have held that multiplicity violations can amount to plain error.[14]  Further, "plain error review in a multiplicity challenge not contesting the facts is effectively *de novo*."[15]

The multiplicity doctrine, which is derived from the Double Jeopardy clauses of the Delaware and United States Constitutions, "prohibits the State from dividing one crime into multiple counts by splitting it 'into a series of temporal and spatial units.'"[16]  We typically examine "whether the defendant's acts are sufficiently differentiated by time, location, or intended purpose[,]" and decide if that separation can support a finding that the defendant had a separate intent for each criminal act.[17]  In addition, when a defendant is punished multiple times for a single act, we

---

[12] *Mills v. State*, 201 A.3d 1163, 1167 (Del. 2019).
[13] *Id.* at 1167-68 (quoting *Wainright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).
[14] *Id.* at 1168-75; *Zugehoer v. State*, 980 A.2d 1007, 1013 (Del. 2009); *Handy v. State*, 803 A.2d 937, 940-46 (Del. 2002); *Williams v. State*, 796 A.2d 1281, 1284 (Del. 2002).
[15] *White v. State*, 243 A.3d 381, 397 (Del. 2020).
[16] *Mills*, 201 A.3d at 1168.
[17] *Id.*

9

generally engage in statutory interpretation to decide whether the General Assembly intended multiple punishments for the single criminal act.[18] Here we address whether Patrick is being punished multiple times for the act of possessing one deadly weapon by a person prohibited.

Section 1448 of the Criminal Code is entitled "Possession and purchase of deadly weapons by persons prohibited; penalties." Section 1448(a) sets forth ten classes of people prohibited from "purchasing, owning, possessing, or controlling a deadly weapon or ammunition for a firearm within the State." Among other charges, the Grand Jury indicted Patrick (Count Two) for possession of a firearm by a person prohibited under § 1448(a)(1) for individuals convicted in Delaware or elsewhere of a felony or a crime of violence causing physical injury. The Grand Jury also indicted Patrick (Count Four) for possession of a deadly weapon by a person prohibited under § 1448(a)(9) for individuals convicted of drug possession along with a firearm. For purposes of this appeal, Patrick does not dispute that he qualified as a person prohibited under both sections. What Patrick does dispute is whether his status as a person prohibited under two subsections of § 1448 allowed the State to punish him twice for the act of possessing a firearm by a person prohibited.

Patrick argues that the General Assembly intended to punish the act of possessing a deadly weapon or ammunition by a person prohibited, and not his status

---

[18] *Id.* at 1168-69. (quoting *Poteat v. State*, 840 A.2d 599, 603-04 (Del. 2003)).

10

as a person prohibited. In other words, the relevant unit of prosecution is the unlawful act of possession of a firearm or ammunition by a person prohibited, and not each way a person qualifies as a prohibited person. By punishing him twice for the act of possession of a firearm or ammunition by a person prohibited, Patrick claims the convictions were multiplicitous and violated his constitutional right to protection from Double Jeopardy.

The State, on the other hand, claims that the General Assembly did intend multiple punishments based on each class of prohibited person. In other words, because the General Assembly set forth ten separate ways an individual can qualify as a person prohibited, the General Assembly intended as many as ten separate punishments for the act of possession of a deadly weapon or ammunition. The State appears to rely on 11 *Del. C.* § 206 and *Blockburger v. United States*.[19]

In *Blockburger* the U.S. Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[20] Section 206 was intended to codify the *Blockburger* inquiry:

> (a) When the same conduct of a defendant may establish the commission of more than 1 offense, the defendant may be prosecuted

---

[19] 284 U.S. 299, 304 (1932).
[20] *Id.*

for each offense . . . . The defendant may not, however, be convicted of more than 1 offense if:

> (1) One offense is included in the other, as defined in subsection (b) of this section . . .

(b) A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when:

> (1) It is established by the proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) It involves the same result but differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.[21]

Neither Section 206 nor *Blockburger* is needed in this case because a single statute criminalizes possession of a deadly weapon or ammunition by anyone who qualifies as a person prohibited under one of the ten different classes. *Blockburger* and Section 206 are needed when a single act violates two distinct statutory provisions.[22]

Additionally, the legislative intent behind Section 1448 is clear—the unit of prosecution is the act of possession of a deadly weapon by a person prohibited and not the way in which a defendant qualifies as a person prohibited. To qualify for the

---

[21] 11 *Del. C.* § 206.

[22] *Mills*, 201 A.3d at 1168–78 (applying multiplicity doctrine, not *Blockburger* or Section 206, to decide whether two counts of violating 11 *Del. C.* § 1257 based on a single act violated the prohibition against Double Jeopardy); *U.S. v. Cooper*, 886 F.3d 146, 153 (D.C. Cir. 2018) (stating the *Blockburger* test applies when the same act violates two distinct statutory provisions, but when a single act is charged with two counts of violating the same statute, the multiplicity doctrine applies).

crime set forth in § 1448, the State must prove two elements—first, the person falls into one of the ten categories of persons prohibited from possessing a deadly weapon or ammunition, and second, that the person possessed the deadly weapon. The crime the General Assembly sought to punish is a prohibited person "purchasing, owning, possessing, or controlling a deadly weapon or ammunition for a firearm within the State."[23] It is not how many ways a defendant qualifies as a person prohibited.

The State's interpretation of the statute yields absurd results. In *Mills*, we faced the question whether the relevant unit of prosecution for a resisting arrest charge is (1) the act of resisting arrest; or (2) the number of officers whose arrest the defendant resists.[24] To answer this question, we looked at what the General Assembly intended to punish when it enacted the statute.[25] We held that the General Assembly intended to punish the act of resisting arrest, in part because punishing someone for the number of officers whose arrest she resists would lead to absurd results.[26] For example, a motorist who refuses to pull-over and is eventually chased by 200 police officers could be charged with 200 counts of resisting arrest.[27] Similarly, if we accept the State's argument that the General Assembly intended

---

[23] 11 *Del. C.* §1448(a). *See also* § 1448(b) (a person prohibited under section (a) "who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm while so prohibited shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited.").
[24] *Mills*, 201 A.3d at 1171.
[25] *Id.* at 1172–74.
[26] *Id.* at 1174–75.
[27] *Id.* at 1174.

separate punishments for defendants for each way they qualify as persons prohibited, absurd results will follow. For example, a juvenile who was adjudicated delinquent for selling narcotics and later arrested for having a single, unloaded handgun and a personal use amount of marijuana could be charged with three counts of possession of a deadly weapon or ammunition by a person prohibited under Section 1448(a)(4), (5), and (9), despite possessing only one firearm.

Further, the fact that the statute is found in Chapter 5, Subchapter VII, Subpart E of the Delaware Code, which is entitled "Offenses Involving Deadly Weapons and Dangerous Instruments," is further evidence that the General Assembly was concerned with criminalizing the possession and use of deadly weapons by prohibited persons and not a person's status as a person prohibited.[28] In Subpart E, there are a number of sections concerned with carrying deadly weapons,[29] the unlawful use of dangerous or destructive weapons,[30] the sale of firearms,[31] and unlawful transfers or theft of firearms.[32] The prohibited-persons classifications in 11 *Del. C.* § 1448(a) are unrelated as they refer to age, mental condition, prior criminal convictions, including specific drug offense convictions, and possession of

---

[28] 11 *Del. C.* §§ 1441-1461; *Mills,* 201 A.3d at 1171-72 (relying on the placement of the crime of resisting arrest by force or violence in the Delaware Code to determine the proper unit of prosecution for the crime as the act of resisting arrest by force or violence and not the number of officers the defendant resisted by force or violence).

[29] 11 *Del. C.* §§ 1441-1443.

[30] *Id*. at §§ 1444-1448, 1449, 1452-1453, 1456-1460.

[31] *Id*. at §§ 1448a-c.

[32] *Id*. at §§ 1451, 1454-1455, 1461.

controlled substances. Preventing prohibited persons from obtaining or using deadly weapons, however, is related to these other sections, which shows that the General Assembly intended to punish the act of possession of the deadly weapon, not the prohibited-person classifications.

Our reasoning is supported by our decision in *Buchanan v. State*.[33] In that case, Buchanan was prohibited from possessing firearms under a Protection from Abuse Order.[34] A law enforcement officer stopped Buchanan's car and discovered a zippered bag containing two handguns, a loaded magazine, and additional ammunition in the car.[35] Buchanan was charged and convicted of three counts of possession of a deadly weapon or ammunition by a person prohibited for the two handguns and ammunition.[36] After multiple appeals, Buchanan eventually argued that his counsel was ineffective for failing to argue that the three counts of possession of a deadly weapon or ammunition by a person prohibited should have merged into a single offense.[37] We held that counsel was constitutionally effective because a charge for each act of possession under the statute was proper, meaning the relevant unit of prosecution is each act of possession and not his status as a person prohibited.[38] We agreed with this approach in *Brown v. State*, where we affirmed

---

[33] 26 A.3d 213, 2011 WL 3452148 (Del. 2011) (TABLE).
[34] *Id.* at *1.
[35] *Id.*
[36] *Id.* at *1–*2.
[37] *Id.* at *4.
[38] *Id.*

Brown's convictions on two counts of possession of a deadly weapon or ammunition by a person prohibited based on Brown's possession of a single firearm and ammunition for that firearm.[39]

Our interpretation of the statute is consistent with how similar statutes have been interpreted by other states. In *Melton v. State*, the Maryland Court of Appeals interpreted a statute like Section 1448 that criminalized the possession of a firearm by individuals with certain prior criminal convictions.[40] The court held that "interpreting the unit of prosecution as the prior conviction would be akin to stating that . . . the main goal of the statute . . . is punishing persons with prior convictions based solely on their status."[41] It reasoned that this is an absurd result because a person, "if his status was criminalized, would be committing a criminal offense 24 hours a day merely by existing—by being alive."[42] Following the *Melton* court's logic, if we interpret the relevant unit of prosecution as each way a person qualifies as a prohibited person, the General Assembly is essentially punishing people because they are convicted felons,[43] or juveniles,[44] or were involuntarily committed for a mental condition.[45] This cannot be what the General Assembly intended to punish.

---

[39] 2021 WL 2588923 at *1 (Del. Jun. 24, 2021).
[40] *Melton v. State*, 842 A.2d 743, 745 (Md. 2004).
[41] *Id.* at 756.
[42] *Id.* at 761.
[43] 11 *Del. C.* § 1448(a)(1).
[44] *Id.* at § 1448(a)(5).
[45] *Id.* at § 1448(a)(2).

Rather, the General Assembly intended to punish each act of possession of a deadly weapon by a person prohibited.

Patrick committed only one act of possession of a deadly weapon under Count Two of the Indictment. Thus, we reverse his conviction under Count Four of the indictment. His remaining argument on appeal claiming evidentiary insufficiency supporting his conviction under Count Four of the indictment is therefore moot.

## III.

We affirm Patrick's convictions other than his conviction under Count Four of the Indictment. We reverse his conviction under Count Four and instruct the Superior Court on remand to vacate this conviction and sentence.